**Oather Jefferson SAMPLES and Barbara Jackson, on behalf of their minor child David SAMPLES, deceased, and on their own behalf, Plaintiffs–Appellants,**

v.

**CITY OF ATLANTA and Officer J.M. Oglesby, Individually and in his official capacity as a police officer for the City of Atlanta, et al., Defendants–Appellees.**

No. 87–8576.

United States Court of Appeals, Eleventh Circuit.

June 13, 1988.

Yehuda Smolar, Thomas Allan Rice, Atlanta, Ga., for plaintiffs-appellants.

Marva Jones Brooks, Law Dept. City of Atlanta, George R. Ference, W. Roy Mays, III, Atlanta, Ga., for defendants-appellees.

Before FAY and CLARK, Circuit Judges, and GUIN [*], District Judge.

FAY, Circuit Judge:

Plaintiffs Oather Jefferson Samples and Barbara Jackson [1] appeal the decision of the United States District Court for the Northern District of Georgia to grant the defendants' summary judgment motion. We agree with the plaintiffs that their claims against both Officer J.M. Oglesby and the city of Atlanta ("the city") raise genuine issues of material fact and that, therefore, summary judgment was inappropriate.

### Factual Background

Neither side denies that the background to this case is tragic. At approximately 4:30 a.m. on August 1, 1984, Oglesby shot sixteen-year-old David Samples. Oglesby fired six shots at Samples, emptying his revolver. Five of the bullets hit the youth. Two, which struck him in the chest, were fatal. Two other bullets hit Samples in his left side, and a fifth struck him in the back.

There were no witnesses to the shooting or to the events leading up to it. All that any third parties could attest to was that, at around 4:30 a.m., Oglesby notified the radio dispatcher that he was investigating a "demented person" and that, twenty-eight seconds later, he radioed in news of the shooting. By the time the ambulance

---

[*] Honorable J. Foy Guin, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Plaintiffs, who are now divorced, are the natural parents of the deceased, David Samples.

arrived a few minutes later, Samples was dead.

Subsequently, the Atlanta police department investigated the shooting and exonerated Oglesby. In addition, the Civilian Review Board, an independent and neutral body commissioned by Atlanta Mayor Andrew Young to investigate incidents of police violence, determined that Oglesby acted reasonably under the circumstances.

Samples' parents, however, were not convinced that Oglesby's actions were justified. Consequently, they filed this suit under 42 U.S.C. § 1983. They claim that Oglesby used excessive force in killing their son, and thus deprived Samples of his life in violation of the fourteenth amendment's due process clause. In addition, they allege that the city is liable for having a practice of condoning such acts of police violence. This practice, the plaintiffs contend, manifests itself most noticeably in the inadequate investigation and punishment of police officers who exercise excessive violence in carrying out their duties.[2]

When the defendants moved for summary judgment, the plaintiffs responded with materials that included affidavits, depositions, newspaper articles chronicling the Samples shooting, and documentation regarding claims filed by private citizens against various Atlanta police officers. The district court did not consider all of the information presented. The court struck most of the affidavit of J.T. Miller, a retired investigator formerly employed by Atlanta's Bureau of Police Services, Office of Professional Standards.[3] In addition, the court failed to unseal and consider most of the depositions submitted by the plaintiffs. Based on the two depositions that the court did consider and on the remainder of the evidence before it, the district court granted summary judgment in favor of the defendants.

### Legal Standards Governing Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure permits courts to grant summary judgment motions in cases in which there is no genuine issue of material fact. *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir.1988). To survive a motion for summary judgment, a plaintiff need " 'only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

A court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988) (per curiam). An appellate court applies this same legal standard when a party appeals an adverse summary judgment ruling. *Livernois*, 837 F.2d at 1021–22.[4]

---

**2.** In addition, the plaintiffs assert that the police department has worsened the situation through its failure to adequately train officers in alternative methods of self defense. Because we reverse the summary judgment against the city on other grounds, we do not have to reach this issue.

**3.** The court declared that the affidavit contained conclusory statements and inadmissable opinion statements. Therefore, it struck all but the part of the affidavit that identified Miller and set forth his qualifications and experience.

**4.** This standard of review is substantially less deferential than that applied by an appellate court reviewing the verdict issued by a court following a bench or jury trial. In that situation, the appellate court can only overturn a verdict that is clearly erroneous. Fed.R.Civ.P. 52(a); *see Williams v. Kelley*, 624 F.2d 695, 698 (5th Cir.1980) (binding on this circuit under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc)), *cert. denied*, 451 U.S. 1019 (1981). This more deferential standard also applies when the trial court grants the defendant's involuntary dismissal motion at the close of the plaintiff's case. Fed.R.Civ.P. 41(b); *see Parrott v. Wilson*, 707 F.2d 1262, 1272–73 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Therefore, the cases to which the defendants cite us involving review of

With this standard in mind, we can evaluate the summary judgments rendered against the two defendants.

### Claim Against Police Officer Oglesby

■ In *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), this court held that claimants can sue under § 1983 for unreasonable acts of police violence. *Gilmere*, 774 F.2d at 1499–1502.[5] Of course, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates [an individual's] constitutional rights." *Id.* at 1500 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Cognizant of this, we attempt to consider the validity of a § 1983 claim of police abuse in light of the situation provoking the violence. This circuit evaluates an excessive force claim by considering such factors as the need for using force, the relationship between the need for using force and the amount of force used, the reason for using force— that is, whether the officer applied force in good faith or with malicious intent, and the extent of the injury suffered. *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1440 (11th Cir.1985).[6]

■ We must determine whether, based on this set of facts and this legal standard, a reasonable fact finder could find that Oglesby applied excessive force. There is uncontroverted evidence establishing that Oglesby shot at Samples six times, and that, as a result of the shooting, Samples died. Therefore, we must weigh the remaining factors to determine whether, as a matter of law, Oglesby's conduct must be said to have been reasonable and motivated by a genuine fear for his own safety or whether it can be found to have been unwarranted.

Because there were no witnesses to the incident, the only available account of the event comes from Oglesby himself. He stated that, as he was driving through the high crime area of Cabbagetown, Oglesby noticed Samples screaming like a demented person in a phone booth. Therefore, Oglesby radioed in his intention to investigate and got out of his car to question Samples. Samples responded by swearing at Oglesby and throwing a Fanta grape soda bottle at the officer.[7] In addition, Oglesby said, Samples pulled a knife out of his pocket and began opening it. While opening the knife, Samples approached Oglesby in a threatening manner. Oglesby claimed that he demanded that Samples stop opening the knife but that, instead of listening, Samples moved even closer to Oglesby. Therefore, Oglesby explained, he feared for his life and shot Samples. His first shot did not stop Samples, Oglesby said, but only appeared to increase Samples' anger and intensify his efforts to approach and harm Oglesby. Oglesby stated that he continued to shoot until Samples turned

verdicts rendered after a full trial do not apply here.

5. In the opinion, we described the two ways in which such a claim can be framed. First, police abuse sufficiently egregious to "shock the conscience" violates substantive due process. *Gilmere*, 774 F.2d at 1500–01 (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Second, a claim exists against police officers who conduct an unreasonable seizure in violation of the fourth amendment. *Gilmere*, 774 F.2d at 1501–02; *see Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (apprehension by use of deadly force by a police officer constitutes a "seizure" and, consequently, is subject to the fourth amendment's reasonableness requirement).

Plaintiffs appear to assert that the police abuse was sufficiently shocking to violate Samples' right to substantive due process. Therefore, we analyze their claim in light of that test.

6. In evaluating a claim brought pursuant to the fourth amendment, a court must consider the seizure in light of the governmental interests that purportedly justified it. *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699–1700; *Gilmere*, 774 F.2d at 1502.

7. There is some question as to exactly when Samples allegedly threw the bottle at Oglesby. Any inconsistencies in Oglesby's story on this matter, however, do not affect our analysis of the summary judgment motion.

around, took a few steps, and fell to the ground.

Some of the available information supports Oglesby's version of the story. Samples was on the phone around the time of the shooting, talking to his mother. He was admittedly in a very confused and emotional state,[8] and had almost gotten into a fight earlier that evening. There was a broken Fanta bottle on the scene; and, a knife lay on the ground not far from Samples' lifeless form.

There are also facts which raise contrary inferences, however. First, the knife that lay near Samples was an unopened pocket knife. Defendants point out that the type of knife found on the scene automatically shuts when opened at less than a forty degree angle. Thus, the fact that the knife was shut when the police later found it does not necessarily conflict with Oglesby's story. It is possible that Samples had tried to open the knife but was shot before he succeeded. However, it is also possible that Samples never attempted to open the knife. If this is true, it raises a serious issue regarding the question of excessive force.

There is also physical evidence from which a fact finder could infer that—even based on Oglesby's version of the facts—Oglesby was excessively violent. The knife itself is one such piece of evidence. For, the knife is a small one, with a three-inch blade. Of course, if it had been brandished by an emotionally overwrought youth

at 4:30 a.m., on a quiet and deserted street in a dangerous part of the city, this knife may have seemed life-threatening. And, a jury could reasonably reach such a conclusion. But, it is also possible that a reasonable jury could conclude that Oglesby applied excessive force in reacting as he did to a small, at least partially-unopened pocket knife.

Further, the difference in size between Oglesby and Samples raises an issue of fact. At the time of the shooting, Oglesby was 5'9" and 225 pounds, and lifted weights. Samples, on the other hand, although as tall as Oglesby, weighed only 128 pounds. Pictures of him show that he was a skinny youth. Although the defendants assert that this physical disparity is irrelevant, we find that, in the context of this case, it raises an inference that the situation was not life-threatening and that, therefore, Oglesby was excessively violent in killing Samples.

Finally, we note that one of the bullets struck Samples in the back. This raises a serious issue of fact. Of course, it is possible that the force of the first four bullets spun Samples around, so that the fifth struck him in the back. However, it is also possible that after Samples turned to run away, Oglesby continued shooting. Another possibility is that the first shot hit Samples in the back, and that this so angered Samples that he turned around and started running at Oglesby. In either of the latter two scenarios, serious issues of fact exist

---

**8.** Shortly after Samples' death, an Atlanta newspaper wrote a story about Samples' short life. Sack, "David lived and died on the streets of Cabbagetown," Atlanta Const., Aug. 3, 1984, at 1A. The story depicts Samples as a nice, likable youth who had been deeply affected by the "downward pull" of the neighborhood in which he grew up, and by events in his personal life: "He had suffered through his parents' divorce and his father's bouts with alcohol.... He had been shaken by the conviction of a sixteen-year-old brother for murder and a twenty-five-year-old stepbrother for kidnapping and robbery." *Id.* at 12A.

By the time he was fourteen, Samples had tried alcohol and a variety of drugs, and had been picked up by the police on a number of occasions. In 1983, Fulton County probation officials decided that it would be best to have Samples move out of the neighborhood in

which he had grown up. Therefore, they arranged for the boy to move in with one of his stepbrothers in Henry County. Then, his mother moved into Rockdale County so that she could live with her son. Samples apparently began making progress at this time, but continued to get into trouble when he returned to his old neighborhood to visit friends.

Samples' mother told the reporter that her son called her at 4:15 a.m. on August 1, 1984. He was crying when he called. In the course of the conversation, he told her how much he loved and missed his brother Ronnie, who was in jail. "'He said he was going to stop the first police car that stopped at a red light and see if they'd lock him up so that he could be with Ronnie,' Mrs. Jackson [Samples' mother] said." *Id.* at 12A. Minutes later, Samples encountered Oglesby.

regarding the question of excessive force. We do not have to determine which version of the story is most likely to have occurred. All we should note is that they are all possible on the facts before us.

The evidence is not, as defendants allege, uncontroverted. Although there is evidence from which a fact finder could conclude that Oglesby's actions were reasonable, there is also evidence suggesting a contrary conclusion. Because of the score of unanswered questions which remain, the issue of liability cannot be resolved by way of summary judgment.

### Liability of the City of Atlanta

■ In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court determined that municipalities can be subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." *Id.* at 694, 98 S.Ct. at 2037–38. As the *Monell* Court also pointed out, however, there are limitations to this liability. A local government cannot be held liable under § 1983 on a *respondeat superior* theory. *Pembaur v. Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986); *Fundiller*, 777 F.2d at 1443. Instead, the policy or practice must be the "moving force of the constitutional violation" at issue. *Monell*, 436 U.S. at 694, 105 S.Ct. at 2037; *Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434–35, 85 L.Ed.2d 791 (1985) (plurality).

Accordingly, the plaintiffs assert in their claim against the city that the Atlanta police force has an unwritten practice of deliberately overlooking acts of police brutality in order to foster a "shoot to kill" attitude among the members of the police force.[9] In support of this allegation, the plaintiffs have shown: (1) that, in recent years, an extremely low percentage of claims filed against Atlanta police officers have been sustained by the force, and that the rate is particularly low with respect to claims involving police brutality; (2) that in the police-run investigation of the Samples' shooting, not all of the questions the investigators had were answered; (3) that, in speaking of the shooting, the captain of Oglesby's precinct allegedly[10] said, "You can disarm a guy with your own hands, but that's TV heroics. In the real world, it's foolish to do anything but shoot. He shot to kill, of course. That's 100 percent right."[11] We do not have to determine whether, without more, this showing would be sufficient to preclude summary judgment. For, when considered along with the complete affidavit of J.T. Miller, the pertinent parts of which were stricken by the district court, there is more than enough evidence to necessitate a reversal of the defendant's summary judgment order.[12]

J.T. Miller worked for the Atlanta police department from November 17, 1966 to January 14, 1985. Based on his experience with the department, he claimed that he had knowledge of its policies and practices. And, he declared that the department had a practice of not conducting thorough investi-

---

9. Because the district court granted summary judgment for defendant Oglesby, it naturally found no reason to proceed further in its analysis. Since Oglesby committed no § 1983 violation, the court reasoned, the city could not be responsible for causing a § 1983 violation. Because we reverse the summary judgment granted in favor of defendant Oglesby, we must proceed further in our analysis.

10. Captain L.F. New, the officer in question, states that he was misquoted.

11. Moss, "Rockdale teen shot 5 times, autopsy finds: Police say officer '100 percent right,'" Atlanta Const., Aug. 2, 1984, at 1A.

12. The plaintiffs also argue that, because Miller had served as an investigator of internal affairs for part of his tenure with the police force, he was an expert witness. *See* Fed.R.Evid. 702. As an expert, he examined documents relating to the Samples case and declared that Oglesby used excessive force. We do not reach the issue of the admissibility of the affidavit for the purpose of proving excessive force because there is already enough evidence to reverse the summary judgment as to Oglesby. *See supra* pages 1330–33.

gations of acts of police brutality. He stressed that this stemmed from its "shoot first, ask questions later" philosophy—a philosophy that was well known to the members of the force. If believed, Miller's contentions clearly establish a cause of action against the city of Atlanta.

The district court, however, struck all of the relevant parts of the affidavit. The court apparently did so because it determined that Miller's affidavit was filled with baseless and conclusory statements. We disagree with the court's conclusion. We acknowledge that we must accord a great deal of deference to the rulings of district courts on evidentiary matters. *See, e.g., United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986); *Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303, 1306 (11th Cir.1985). In this case, however, we feel that the affidavit was admissible and should have been considered by the district court.

■ A district court, in considering a summary judgment motion, has an obligation to consider all admissible evidence, including admissible affidavits. Miller's opinion testimony concerning police practice is admissible if it is (1) rationally based on his own perceptions and (2) helpful to a clearer understanding of the plaintiff's case. Fed.R.Evid. 701. Miller, who had worked in the department for a long time, was basing his opinion regarding police department practice on his personal observations. His statements relate to the issue of whether the Atlanta police force has a policy or practice of encouraging police brutality. This is the question upon which the liability of the city hinges. Thus, it is clearly admissible and should not have been stricken.

All this evidence taken together clearly raises material issues of fact concerning the claim against the city. Therefore, the summary judgment granted in favor of the city must also be reversed.

*Conclusion*

In conclusion, we find that summary judgment should not have been granted against the plaintiffs in either instance. This case, with its many remaining questions and issues of fact, is clearly one that should be resolved after a full trial, rather than on summary judgment.

We indicate nothing regarding the final outcome of the claims presented; we only rule that a full trial is necessary. In making this ruling, we are fully cognizant of the dangers which police officers face on a constant basis, and the horrible consequences that may result if they hesitate to protect themselves. The courts, however, bear the awesome responsibility of safeguarding the rights of all citizens. This includes the freedom to use the streets of our cities without undue interference or violence from either law breakers or law enforcement officials. We find that, in this instance, impartial fact finders must determine the merits of these claims after the facts have been fully developed.

**REVERSED** and **REMANDED** for a trial on the merits.[13]

---

13. As we noted previously, the trial court failed to unseal a number of depositions that the plaintiffs filed in opposition to the summary judgment motion. Since the law obligates a court considering a summary judgment motion to rule based on all the materials that have been filed, the better course of action would have been for the court to review all of the evidence before it. However, because we have reversed the summary judgment on other grounds, we need not discuss whether the court erred in not unsealing the documents, or whether any error that the court may have committed was harmless.