**TRUCKS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 1:96–cv–0800–CC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 10, 1997.

Donald B. DeLoach, William E. Frantz, Brenda Diane Green Bates, Frantz Sanders & Grattan, Altanta, GA, for Plaintiff.

David Wright, Office of U.S. Atty.; Northern District of Georgia, Atlanta, GA, Ann Carroll Reid, U.S. Atty., Michael N. Wilcove, pro hac vice–DOJ, Steven M. Webster, pro hac vice–USA, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## ORDER

COOPER, District Judge.

Plaintiff Trucks, Inc. ("Plaintiff") brings this suit for a refund of employment taxes paid to Defendant United States of America ("Defendant") for the years 1991, 1992 and 1993. Pending before the Court are the parties' cross motions for summary judgment [17–1 and 18–1] [1] and Defendant's Motion for Leave to File a Revised Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [22–1].

## BACKGROUND

Plaintiff is in the business of hauling commercial freight by truck, primarily in the southeastern United States. Plaintiff employs both local and over-the-road ("OTR") drivers to operate the tractor trailers used to transport the freight. The OTR drivers are regularly required to be away from home in connection with the performance of their duties. During the years at issue in this case, all of the trucks used by the OTR drivers had sleeper compartments.

For each trip taken by the OTR drivers, the drivers were required to submit to Plaintiff daily time logs and a trip envelope. The time logs reflected the number of hours the driver spent working, and the trip envelope contained the delivery receipt for the freight hauled and the original tickets for fuel purchased. The trip envelope also contained the name of the driver, the date and location of the trip origination, the trip destination, the number of miles driven, the states driven through, the number of gallons of fuel purchased, and the routes run.

---

1. Because the Court concludes that oral argument is not necessary for clarification of the issues presented in this case, Plaintiff's request for oral argument is DENIED.

During 1991, 1992 and 1993, the wages and other compensation paid by Plaintiff to its OTR drivers were based upon the load revenue for the particular trip taken. Load revenue was calculated primarily on the basis of the number of miles driven, but a number of other factors were also taken into account, including the time required to unload and reload the trailer, the road and weather conditions for the geographic region involved, and the size and type of equipment used for the haul. Plaintiff paid its OTR drivers fourteen percent (14%) of the load revenue generated by each trip as wages, and a flat rate of six percent (6%) of the load revenue as a per diem expense reimbursement. On a weekly basis, the drivers were given settlement sheets, which reflected the load revenues generated for the week and the amounts allocated to wages and to the per diem expense reimbursement allowance. The expense reimbursement allowance was intended to cover the costs of meals, lodging and other incidental travel expenses while the OTR drivers were away from home. Plaintiff did not require its drivers to submit receipts or otherwise substantiate their expenses incurred on a trip. The same flat rate was paid to the drivers regardless of how much money was actually spent on meals and incidentals and regardless of whether the drivers actually incurred the cost of lodging rather than sleeping in their trucks.

For the years at issue, Plaintiff excluded from wages the amounts paid to its OTR drivers as reimbursement for travel expenses. The excluded payments totaled over $1.3 million for 1991, over $2.2 million in 1992, and over $34 for 1993. The Internal Revenue Service (the "IRS") subsequently determined that these amounts were includable as wages, and assessed additional employment taxes, penalties and interest. After paying a total of $12,000 towards the deficiency, Plaintiff filed the instant lawsuit for a refund of the amounts paid and an abatement of any and all other assessments made by Defendant against Plaintiff with respect to additional employment taxes, penalties and interest. In its Complaint, Plaintiff essentially contends that it is entitled to a refund and abatement because the expense reimbursements at issue were paid pursuant to an accountable plan. Defendant filed its Answer, and asserted a counterclaim for the unpaid balance of the assessments.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) Because summary judgment deprives the parties of a trial on the issues, the Court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by the procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56 "[b]y its very terms, ... provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). The materiality of facts is governed by the substantive law *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that the factual issues "may

reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## II. *Plaintiff's Burden of Proof*

In a tax refund suit such as this, the "deficiency determinations [of the IRS] are presumed correct, and the burden of proof is on the taxpayer to show that the [IRS's] findings were erroneous. A taxpayer seeking a refund must show not only that the [IRS] erred, but must establish the correct amount of the refund due. The claim must be substantiated by something other than tax returns, uncorroborated oral testimony, or self-serving statements." *Mays v. United States,* 763 F.2d 1295, 1297 (11th Cir.), *cert. denied,* 474 U.S. 998, 106 S.Ct. 416, 88 L.Ed.2d 365 (1985) (citations omitted).

## III. *Tax Regulations*

Plaintiff contends that the expense reimbursements paid to its OTR drivers were paid pursuant to an accountable plan. Pursuant to § 62(a)(2)(A) of the Internal Revenue Code (the "IRC"), under certain circumstances a taxpayer is permitted to deduct from his gross income those reimbursements for business expenses paid or incurred by the taxpayer "under a reimbursement or other expense allowance arrangement with his employer." 26 U.S.C. § 62(a)(2)(A).[2] Under the implementing regulations for § 62 of the IRC, "a reimbursement or other expense allowance arrangement" constitutes an accountable plan if the arrangement meets the following three criteria: (1) the expense reimbursements are for business-related activities only, *see* 26 C.F.R. § 1.62–2(d); (2) the expenses are substantiated to the employer within a reasonable period of time, *Id.* at § 1.62–2(e); and (3) the arrangement requires the employee to return to his employ-

er within a reasonable time any amounts paid in excess of the expenses substantiated, *Id.* at § 1.62–2(f). *Id.* at § 1.62–2(c)(2)(i). Amounts paid by an employer under an "accountable plan" are excluded from the employee's gross income, are not reported as wages or other compensation on the employee's W–2 form, and are exempt from the withholding and payment of employment taxes. *Id.* at § 1.62–2(c)(4). If the employer's expense arrangement does not meet the three criteria listed above, the reimbursements are treated as paid under a "nonaccountable plan," and the payments are included in the employee's gross income, must be reported as wages on the employee's W–2 form, and are subject to withholding and the payment of employment taxes. *Id.* at §§ 1.62–2(c)(3) and 1.62–2(c)(5).

### A. *Business Connection*

■ In order to meet the business connection requirement of an accountable plan, payments must be for business expenses "that are allowable as deductions [under Section 161 *et seq.* of the IRC], and that are paid or incurred by the employee in connection with the performance of services as an employee of the employer." *Id.* at § 1.62–2(d)(1). If an employer pays an amount to the employee as a business expense regardless of whether the employee incurs, or is reasonably expected to incur, the business expense, the payment does not meet the business connection requirement *Id.* at § 1.62–2(d)(3)(i).

In the present case, while it is true that if the OTR drivers incurred lodging expenses it would have been in connection with their performance of services for their employer, Plaintiff's expense arrangement still fails to meet the business connection test because the OTR drivers received the same flat

---

**2.** Section 62(c) provides that:
For purposes of subsection 62(a)(2)(A), an arrangement shall in no event be treated as a reimbursement or other expense allowance arrangement if—
(1) such arrangement does not require the employee to substantiate the expenses covered by the arrangement to the person providing the reimbursement, or

(2) such arrangement provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.
26 U.S.C. § 62(c); *see also* 26 C.F.R. § 1.62–2(b).

rate—6% of load revenue—regardless of whether or not they actually paid for lodging rather than using the sleeper compartments in their trucks. In her affidavit, Ms. Willis, Plaintiffs's owner and president, states that it was her understanding that "drivers who were on the road for two consecutive nights were reasonably and legally expected to incur lodging expenses, based upon [her] conversations with drivers and others in the trucking industry, and based upon [her] observation of the availability of motels specially designed for over-the-road drivers, such as Truck Stops of America." (Affidavit of Helen Willis, ¶ 10.) Other than this uncorroborated and conclusory statement, there is no evidence in the record demonstrating that the OTR drivers routinely incurred lodging expenses. Neither the trip sheets nor the time logs submitted by Plaintiff indicate whether or not lodging expenses were incurred by the OTR drivers while away from home (or if so, for how many nights these expenses were incurred), and Plaintiff has not submitted lodging receipts or testimony from the drivers that they regularly paid for lodging as opposed to sleeping in their trucks. Under such circumstances, the Court concludes that Plaintiff has failed to show that its expense reimbursement arrangement meets the business connection test. As such, the expense reimbursements paid by Plaintiff were paid pursuant to a nonaccountable plan, and all amounts paid under the arrangement should have been reported as wages or other compensation on the employees' W–2 forms, and are subject to withholding and the payment of employment taxes

### B. *Substantiation Requirement*

■ Also without merit is Plaintiff's contention that, because the reimbursements were made pursuant to a per diem expense arrangement, the arrangement constituted an accountable plan. According to Plaintiff, even though its arrangement did not reimburse its drivers for their actual expenses, the drivers' travel expenses are deemed substantiated pursuant to Defendants' own revenue procedures.

Section 274(d)(1) of the IRC provides that a deduction for an expense related to travel away from home will be disallowed "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the amount, time, place and purpose of the expense. 26 U.S.C. § 274(d)(1). More specifically, according to the implementing regulations for § 274, a business expenditure related to travel away from home is substantiated if the taxpayer shows the following: (1) the amount of each separate expenditure, such as cost of transportation and lodging; (2) the dates of departure and return for each trip and the number of days away from home; (3) the destination of the travel; and (4) the business purpose for the travel. 26 C.F.R. § 1.274–5T(b)(2). It is clear in this case that Plaintiff has not met the substantiation requirements of § 274 because Plaintiff's records do not establish the amount of each expenditure incurred by the drivers during their trips, nor do they clearly indicate the dates of return for the trips taken.

As an alternative to the rigid substantiation requirements of § 274, however, the IRS has proscribed that the Commissioner may establish procedures pursuant to which reimbursements may be made on a flat per diem basis. If the procedures established by the Commissioner are met, the reimbursements are considered to be paid pursuant to an accountable plan, even if the payment made to the employee exceeds the amount of expenses that he is able to substantiate for a particular day of travel. During the years in dispute in the instant action, the Commissioner issued several revenue procedures with respect to expense reimbursements made pursuant to a flat per diem allowance. The parties agree that the revenue procedures applicable to this action are Rev. Proc. 90–60, Rev. Proc. 92–17, and Rev. Proc. 93–21, and further that the differences in these procedures are not germane to this action.

Section 3.01 of each revenue procedure provides the following:

The term "per diem allowance" means a payment under a reimbursement or other

**1480**

expense allowance arrangement that meets the requirements specified in section 1.62–2(c)(1) of the regulations and that is (1) paid with respect to ordinary and necessary business expenses incurred, or which the payor reasonably anticipates will be incurred, by an employee for lodging, meal, and/or incidental expenses for travel away from home in connection with the performance of services as an employee of the employer,

(2) reasonably calculated not to exceed the amount of the expenses or the anticipated expenses, and

(3) paid at the applicable Federal per diem rate, a flat rate or stated schedule, or in accordance with any other Service-specified rate or schedule.

*See* Rev. Proc. 90–60, 1990–2 C.B. 651, 652.

At the outset, as previously established above, Plaintiff has not demonstrated that the 6% of load revenue reimbursement arrangement meets the requirements set forth in 26 C.F.R. § 1.62–2(c)(1) because Plaintiff has failed to show that its plan satisfies the business connection requirement of that section

Furthermore, the evidence presented by Defendant demonstrates that the relationship between load revenue and a driver's expenses is tenuous at best. Indeed, Defendant's evidence shows that trips of the same distance resulted in varying reimbursement payments and that OTR drivers who traveled shorter distances sometimes received larger reimbursements than drivers who drove further, presumably because load revenue is calculated on the basis of several factors, of which distance driven is only one such factor. As such, Plaintiff has not shown how a flat per diem rate of 6% of the load revenue is reasonably calculated not to exceed the amount of the OTR drivers' expenses or anticipated expenses. Accordingly, the Court

concludes that Plaintiff's expense reimbursement arrangement does not meet the requirements of § 3.01 of the applicable revenue procedures, and finds that the expense reimbursements paid by Plaintiff are not deemed substantiated as Plaintiff contends.[3]

### CONCLUSION

As Plaintiff has failed to meet its burden of showing that its expense reimbursements were paid pursuant to an accountable plan, and that therefore the IRS' determination of deficiency was erroneous, Defendant's Motion for Summary Judgment [17–1] is GRANTED, and Plaintiffs Motion for Summary Judgment [18–1] is DENIED. Defendant's Motion for Leave to File a Revised Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [22–1] is DENIED. The clerk is directed to enter judgment in favor of defendant on Plaintiff's claim for a refund.

Because the record is somewhat unclear, as to whether Plaintiff disputes the amount of taxes, penalties and interest claimed by Defendant in its counterclaim, Plaintiff is directed to submit within twenty (20) days of the date of this Order a brief and any supporting evidence with respect to its position regarding the amount owed by Plaintiff for taxes, penalties and interest. If no brief has been filed by Plaintiff by the end of the twenty day period, the clerk is directed to enter judgment in favor of Defendant on Defendant's counterclaim in the amount of $1,032,969.30.

---

**3.** Moreover, because Plaintiff's expense reimbursement arrangement did not require the OTR drivers to return that part of the reimbursement attributable to lodging expenses if they did not in fact incur lodging expenses, the plan fails to meet

the third criteria for a "reimbursement or other expense allowance arrangement," as the drivers were not required to return to Plaintiff within a reasonable time any amounts paid in excess of substantiated expenses.