WILSON, Circuit Judge, dissenting: I would not disturb the jury’s verdict on Dontrell Stephens’ excessive force claim brought pursuant to 42 U.S.C. § 1983. The jury determined that Deputy Adams Lin used excessive force against Stephen's in violation of the Fourth Amendment by shooting him four times at close range— rendering him a paraplegic—after stopping him for riding his bicycle on the wrong side of the road. Appealing the denial of their motion for a new trial, Deputy Lin and Sherriff Bradshaw argue that the district court abused its discretion by improperly instructing the jury in two ways: (1) by not allowing them to present a special interrogatory to the jury, asking whether Deputy Lin made a reasonable mistake; and (2) by refusing to give the jury a “20/20 hindsight” instruction, to let the jury know that it must judge the officer’s reasonableness “at the time of the events, not from hindsight.” But rather than address these specific issues, the majority opinion sets aside the jury’s verdict for a different reason—that the jury instructions given did not accurately reflect the law, and that Deputy Lin was deprived of the opportunity to have his qualified immunity defense considered by the district court. Although the panel questioned counsel at oral' argument about whether qualified immunity was improperly presented to the jury, the issue was neither briefed, nor appealed. I dissent because the jury instructions did properly state the law. And I disagree with the majority’s determination that the district court improperly relinquished consideration of Deputy Lin’s entitlement to qualified immunity to the jury rather than retain it for consideration by the district court judge himself. Lastly, I disagree with the majority’s resolution of the Mo-nell claim. I. THE JURY INSTRUCTIONS As we previously stated in the prior appeal, a reasonable jury could find that Deputy Lin violated Stephens’ clearly established constitutional rights by employing excessive force, and by finding that the allegedly violated right was clearly established by governing law. See Stephens v. Lin, 612 Fed.Appx. 581, 582 (11th Cir. 2015) (per curiam). Here, the jury found that Lin’s use of force was excessive or unreasonable, and, as a result, Stephens suffered injuries warranting damages totaling $23,148,100.00. As an issue of fact, the jury was entitled to determine whether Lin used excessive force. Accordingly, the trial judge submitted the following instruction to the jury: Whether a specific use of force is excessive or unreasonable depends on factors such as. the. nature of any offense involved, whether a citizen poses an immediate violent threat to others, including the police officer, and whether the citizen resists or flees. In assessing these factors, you should consider whether an officer’s belief that a citizen is posing an immediate violent tlireat is an objectively reasonable belief under the' circumstances, ' nothwithstanding that it is a mistaken'belief. Where an officer’s mistaken belief that a citizen poses an immediate and deadly threat is objectively reasonable under the circumstances, then that officer’s use of deadly force is not excessive or unreasonable. On the other hand, where an officer’s mistaken belief that a citizen poses an immediate and deadly threat is not objectively reasonable under the circumstances, then that officer’s use of deadly force is excessive or unreasonable. The majority finds this instruction “problematic not only because - it is an incorrect statement of the -law, but'moreover because it effectively delegated resolution of the issue of qualified immunity to the jury—presumably as to -both facts and law—and thus the district' court never decided whether Deputy Lin was entitled to his claimed defense of qualified immunity.” Maj. Op. at 1166. I disagree on both accounts. The instruction is not an incorrect statement of the law, nor can it reasonably be construed as an improper delegation of the qualified immunity determination to the jury. Whether Officer Lin made an objectively reasonable mistake in believing that Stephens posed a threat is for the jury to decide in making its excessive force determination. This instruction is also consistent with Supreme Court precedent addressing facts to be. considered in excessive force cases. See Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001), overruled, on other. grounds by Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (“If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact ;was needed.”); see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246-47 (11th Cir. 2003) (per curiam) (holding that deadly force is not excessive force where the officer has an objectively reasonable fear that the suspect poses an imminent threat of bodily harm). Qualified immunity’s clearly-established-law requirement, however, looks at whether “the officer’s mistake as to what the law requires is. reasonable, [and when it is reasonable] the officer is entitled to the immunity defense.” Saucier, 533 U.S. at 205, 121 S.Ct. at 2158 (emphasis added). Here, the trial court did not ask the jury whether the officer made a reasonable mistake as to the law. The court merely asked the jury to determine whether excessive force was used. The trial court could not have separated the question of whether a mistake was reasonable from the question of whéther the-force was excessive. Doing so would contravene Supreme Court precedent. Id. (stating that determining the reasonableness of a mistake is part of the excessive force question). If Deputy Lin’s mistake about whether Stephens posed a threat was reasonable, the force he used would not be considered- as excessive. And if Deputy Lin’s mistake about whether Stephens posed a threat was unreasonable, the force he used would be considered excessive, See id. That is exactly what the given instructions said. The court did not err in submitting the factual reasonableness determination to the jury because it had to submit it to the jury for it to determine whether there was excessive force. It is up to the jury to determine whether an officer’s conduct was reasonable in light of the factual circumstances. Here, the jury determined that the force used by Deputy Lin was unreasonable. It is then up to the trial judge to decide whether qualified immunity is applicable- by asking whether the officer’s conduct was reasonable in light of clearly established law. See Lee v. Ferraro, 284 F.3d 1188, 1193, 1198-99 (11th Cir. 2002). As the majority states, • the trial judge “uses the jury’s factual findings to render its ultimate legal determination as to whether it would be evident for a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted." Maj. Op. at 1164. 'Here, the trial judge did just that. The judge relied on the jury’s factual determination—that Deputy .Lin’s conduct was unreasonable and excessive—to find that Deputy Lin violated Stephens’ Fourth Amendment right to be free from excessive force.- The court, not the jury, determined that Stephens’ right to be free from excessive force was clearly established under existing law. In any event, the district court had already considered, and rejected, Lin’s qualified immunity claim— twice—when the defendants raised it in their motion for judgment as a matter of law and again in the renewed judgment as a matter of law, Therefore, I have no quarrel with the formalities of the district court’s resolution of Deputy Lin’s entitlement to qualified immunity. And taking the deferential nature of the abuse of discretion standard into account, I see no reversible error. See Gowski v. Peake, 682 F.3d 1299, 1310 (11th Cir. 2012) (per curiam). Nonetheless, the issues briefed were whether the district court abused its discretion by: (1) not allowing the defendants to present special interrogatories asking whether Deputy Lin made a reasonable mistake; and (2) not allowing the defendants to present the “20/20 hindsight” instruction in an effort to let the jury know that it must judge the officer’s reasonableness at the* time of the ■ events, and not from hindsight. First, the district court did not err when it declined to provide the jury with a-mistaken belief interrogatory, which would have asked: Do you find by a preponderance of the evidence that Deputy Adams Lin made an objectively reasonable mistake when he perceived that Dontrell Stephens threatened Deputy Adams Lin- with a firearm and posed an imminent threat of death or serious physical harm at the time that Deputy Adams Lin shot Dont-rell Stephens? This proposed interrogatory was covered by the given instructions. And there can be no error when “the trial court[] refus[es] to give a requested instruction ... where the substance of that proposed instruction was covered by another instruction which was given.” Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir. 1985). Here, the court instructed the jury that Deputy Lin’s use of deadly force could not be excessive if Deputy Lin’s mistaken belief that Stephens posed an immediate and deadly threat was objectively reasonable under the circumstances. Thus, for the jury to reach the conclusion that Deputy Lin’s use of force was excessive, it necessarily had to determine that his mistake was objectively unreasonable. And because the jury found that Deputy Lin’s use of force was excessive, it answered what would have been covered in the defendants’ proposed instruction in the negative. The substance of the proposed interrogatory, then, was covered by the jury instructions delivered. And we do not have discretion to assume otherwise because we always assume the jury follows the instructions consistently with their verdict. See United States v. $242,484.00, 389 F.3d 1149, 1155 (11th Cir. 2004) (en banc) (“We always infer that the jury resolved every relevant factual issue in favor of its verdict.” (emphasis added)). Second, the district court also did not err when it declined to provide the following “20/20 hindsight” instruction to the jury: The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. This determination must include allowances for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. The Fourth Amendment reasonableness standard analysis is an objective one. The question is whether the officer’s actions are objectively reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying subjective intent or motivation. Therefore, under the Fourth Amendment, an excessive force case does not involve inquiry into subjective concepts like malice and sadism. In declining to give the instruction, the district court found that (1) the instruction was argumentative; (2) the instruction was not included within the Eleventh Circuit’s Civil Pattern Jury Instructions; (3) the argument was permitted to be made to the jury during closing arguments; and (4) even if excluding it was error, the error was harmless. I agree with the Majority opinion’s conclusion that there was no abuse of discretion here given the specific and thorough determinations made by the district court. See Maj. Op. at 1161-62. II. THE MONELL CLAIM We review de novo the trial court’s order granting summary judgment. S. Waste Sys., LLC v. City of Delray Beach, 420 F.3d 1288, 1290 (11th Cir. 2005). In analyzing a summary judgment motion, we resolve all reasonable doubts about the facts in favor of the non-movant, Stephens, and draw all justifiable inferences in his favor. Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013). “To survive a motion for summary judgment, [Stephens] need only present evidence from which a jury might return a verdict in his favor. If he [has done] so, there is a genuine issue of fact that requires a trial.” Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (internal quotation marks omitted). Ordinarily, a governmental entity cannot be held liable for the unconstitutional actions of its employees under 42 U.S.C. § 1983. However, a governmental entity can be held liable if a plaintiff can show that the unconstitutional act at issue is a result of a policy or custom promulgated by the entity. Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). This showing requires a plaintiff to demonstrate: “(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.” McDowell v. Brotan, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). And because a governmental entity will rarely formally adopt a custom or policy permitting or encouraging constitutional violations, see Grech v. Clayton Cty., 335 F.3d 1326, 1329-30 (11th Cir. 2003) (en banc), Monell claims may be based upon inferences and circumstantial evidence of a custom or policy. For example, “a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing an unconstitutional custom that can subject the government to liability.” Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015) (internal quotation marks omitted and alterations adopted). Here, because the district court found that Stephens established a triable issue of a constitutional violation, only the custom and causation prongs of a Monell claim are relevant. If Stephens has offered sufficient evidence to establish those prongs, he is entitled to proceed to trial on his Monell claim. I would reverse the district court’s dismissal of the Monell claim because Stephens offered sufficient evidence of a custom of tolerating excessive force, and of a causal link between that custom and this shooting to survive a motion for summary judgment. Stephens presented substantial evidence of a custom within the Sherriffs Office. Specifically, the evidence of a custom of tolerating excessive force consists of (1) a number of police shootings that resulted in financial settlements but no officer discipline,[1] (2) statements by Sheriff Bradshaw in the media before investigations of the officer shootings had been, completed, and (3) a number of concerning issues in the investigation of Stephens’ shooting. ■ The practices of the Sheriffs Office before the Stephens shooting suggest the existence of a custom. See id. When that suggestion is considered with the evidence from this shooting, including Sheriff Bradshaw’s comments to the press and the lack of a thorough investigation, there is a triable issue. First, Stephens presented adequate evidence of a lack of discipline within the Sherriffs Office. Between September 2009 and September 2013, the Sheriffs Office entered into 16 separate settlements of lawsuits alleging improper use of force. While settlements are not admissions of guilt, they are also not proof of innocence; thus reaching a settlement agreement does not mean that the Sheriffs Office’s use of force was appropriate. Under the summary judgment standard, these settlements can, at the least, serve as evidence that the Sheriffs Office used force on at least 16 occasions. See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1315 (11th Cir. 2001) (“[T]he issue of municipal liability allows for a broad inquiry into other [claims of wrongdoing]....”). Also, two veteran officers with over 25 years of service stated that' no Sheriffs Office police shooting has ever been deemed unjustified. Finally, Sheriff Bradshaw promoted Lin to Sergeant in 2015, two years after shooting Stephens. Despite a number of shootings involving Sheriffs Office deputies, no officer has ever been punished, no shooting has, ever been deemed unjustified, and one deputy who shot a civilian was promoted— all evidence tending to show a lack of discipline in the Sherriffs Office.., Second, Stephens presented adequate evidence of the. Sherriff s Office’s biased investigations. Stephens submitted evidence of. post-shooting press releases and statements by Sheriff Bradshaw, most of which state that an investigation, is in its “preliminary stages” or is “ongoing.” Sheriff Bradshaw’s declarations that the offi-c'ers acted legally despite the existence of an “ongoing investigation” indicate that the outcome of the investigations were pre-determined.. For example, in a 2008 press release on a shooting by a deputy, the Sheriffs Office stated that “[t]he deputy discharged his firearm multiple times in self-defense” yet in the next paragraph stated, “This case is under investigation.” In another circumstance, only a day after a Sheriff s Office deputy fatally shot a 16-year-old boy, the Sheriffs Office issued a press release stating that “[t]he deputy was justifiably -in fear of his life.” And in á 2012 press release, the Sheriffs Office stated that it was investigating a deputy-involved shooting, but that same day Sheriff Bradshaw told The Palm Beach Post that “[t]he suspect was going to shoot our deputy, we had to shoot first.” These statements of confidence are not necessarily false. However, when we1 take this evidence in the light most favorable to Stephens, it shows a prejudgment that likely influenced the outcome of investigations." Third, Stephens also presented evidence from his own shooting, which cements his Monell claim. See Salvato, 790 F.3d at 1297 (holding that post-event “evidence can shed some light on,what policies existed in the city on the date of an alleged deprivation of constitutional right[s]” and can “lend weight to a finding that there was a policy behind the actions which led to the constitutional violation.” (internal quotation marks omitted)). When the- pre-shooting evidence is combined- with the evidence from Deputy Lin’s shooting of Stephens and viewed in the light favorable to Stephens, 'there is a triable issue of fact about whether the custom tolerating excessive force existed. Sheriff Bradshaw and every other Sheriffs Office employee involved in this shooting unequivocally endorsed Deputy Lin’s actions and adopted his .version of events— notwithstanding the availability of contradictory video evidence. Sheriff Bradshaw publicly , declared, on the morning of the shooting, that Deputy Lin “did the right thing.” Specifically, Sheriff Bradshaw stated: The guy bailed off the bike, ran between two parked cars. The deputy bailed out of his car, yelling to him the whole time, “Stop, put up your hands,. stop.” The deputy goes around the other side of the car to cut him off and apprehends , him. That’s -when the guy came out with the dark object and started to turn towards the deputy.... There’s nothing in the rules of engagement that says we have to put our lives in jeopardy to wait to find out what this is and get killed. The video contradicts this statement. First, Stephens did not run between two parked cars—he walked off his bike towards Deputy Lin in a slow, non-threatening manner after following Deputy Lin’s command for Stephens to come towards him. Second, Stephens did not pull out a dark object at that point—from the time he got off the bike until he was shot, Stephens had his phone in his right hand. And third, Stephens did not turn toward' Lin—he turned away. This is all apparent from the video, which was available for immediate review. Moreover, ⅛ a statement later that day, the Sheriffs Office said it was investigating the shooting, while also declaring: The subject was riding a bicycle, threw the bike down and attempted to run away. The deputy gave verbal commands to “STOP,” “Let me see your hands.” The subject pulled a dark object from his waist band and was shot three times by the deputy. The subject was transported to St. Mary’s Medical Center and is listed in critical condition. But, again, this is contradicted by video evidence. Detective Smith, the officer in charge of investigating the shooting, watched the dash camera video of the shooting before taking Deputy Lin’s sworn statement. Yet when Deputy Lin made statements that contradicted the video, Smith did not question Deputy Lin’s assertions. When confronted during his deposition about why he did not challenge Deputy Lin about the inconsistencies between Deputy Lin’s statement and the video, Smith stated that he did not see the cellphone in Stephens’ right hand during the dash camera video because they were “going so fast,” and he “just didn’t notice it.” In fact, Smith testified that he did not realize that Stephens was holding the cellphone in his right hand, or that Deputy Lin’s sworn statement was inconsistent with the video evidence, until the day of his civil deposition—nearly a full year later. And one of the most troubling aspects of this whole investigation is that no one ever interviewed Stephens about his version of events. Neither investigator reviewing the shooting even tried to contact or interview Stephens. They also never contacted any witness to the shooting, or my witness to attest to whether Stephens actually impeded traffic—a charge Stephens denies and a charge that formed the only other basis for pulling Stephens over besides the dubious claim that Stephens was “unfamiliar.” The Sheriffs Office offered no explanation for these investigatory shortcomings, as is noted in the district court’s summary judgment order. Yet despite all of this evidence, the district court found that a custom did not exist because Stephens did not definitively put forward evidence of a prior unconstitutional shooting. However, the uneonstitu-tionality of Stephens’ shooting alone could arguably be enough to find a custom of tolerating excessive force. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 832, 105 S.Ct. 2427, 2440, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring) (“A § 1983 cause of action is as available for the first victim of a policy or custom ... as it is for the second and subsequent victims; by exposing a municipal defendant to liability on the occurrence of the first incident, it is hoped that future incidents will not occur.”); Vineyard v. Cty. of Murray, 990 F.2d 1207, 1212 (11th Cir. 1993) (per curiam) (“We have noted that a single constitutional violation may result in municipal liability when there is sufficient independent proof that the moving force of the violation was a municipal policy or custom.” (internal quotation marks omitted)). Looking at the totality of the evidence and drawing inferences in Stephens’ favor, a jury could find that the Sheriffs Office had a custom of tolerating the use of excessive force. Stephens also presented adequate evidence to establish a causal link. The causal link here was shown by the depositions of Deputy Lin himself and Chief Tucker, a use of force expert for the plaintiffs side.[2] See Vineyard, 990 F.2d at 1213 (upholding the causation element of a Monell claim based on expert testimony). Chief Tucker provided sworn expert testimony that Sheriff Bradshaw’s “routine and uncritical ratification of his deputies’ use of force was causally connected” to Deputy Lin’s use of deadly force against Stephens. His expert affidavit was based not only upon the standard operating procedures at Sheriffs Office, which sent a message to all deputies that excessive force would not be properly investigated, but also upon Deputy Lin’s admissions of what he knew about those procedures. Chief Tucker opined that Deputy Lin’s admitted knowledge of how past officer involved shootings were handled, plus Deputy Lin’s own experience with use of force alerts and incidents, likely convinced Deputy Lin that nothing would happen to him if he overreacted in using deadly force. Chief Tucker’s expert report states that Sheriff Bradshaw’s routine ratification of his deputies’ actions sent a message to his deputies, and to the Internal Affairs investigators, that excessive force would be tolerated. Considering the custom evidence and the causal link testimony under the summary judgment standard, Stephens presented enough evidence to create a triable issue of fact. I respectfully dissent. . Sheriff Bradshaw did not put any evidence into the record regarding any prior discipline. The district court cited to another case to supply evidence that an officer had been disciplined for his use of force. However, we can- ■ not take judicial notice of a fact found true in another action, without more. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994). . Chief Tucker was the Chief of Police for 23 years in various cities including Tallahassee, Florida, In addition, he served as the Vice-Chairman of the Florida Criminal Justice Standards and Training Commission for three years, which was responsible for establishing minimum standards for the employment and training of all Florida law enforcement officers, including the training of officers on use of force.