[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13035
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 16, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-80003-CV-KLR

SOUTHERN WASTE SYSTEMS, LLC.,

Plaintiff-Appellee,

versus

CITY OF DELRAY BEACH, FLORIDA,
WASTE MANAGEMENT INC. OF FLORIDA,

Defendants-Appellants,

BFI WASTE SYSTEMS OF NORTH AMERICA, INC.,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 16, 2005)**

Before BIRCH, CARNES and HILL, Circuit Judges.

HILL, Circuit Judge:

Southern Waste Systems, LLC sued the City of Delray Beach , Florida and Waste Management Inc. of Florida seeking both a declaratory judgment that a contractual agreement between the defendants was unconstitutional and an injunction against its enforcement. The district court entered summary judgment for plaintiff and this appeal followed.

I.

In 2001, the City of Delray Beach, Florida (the "City") issued a request for proposals, seeking a single contractor to provide comprehensive waste collection services within the City. The request provided that the successful bidder would become the exclusive provider of residential waste collection services, residential waste recycling services, and commercial waste collection services throughout the City. The agreement was to have an initial term of five years.

Southern Waste Systems, LLC ("SWS"), which is in the business of collecting and disposing of construction and demolition debris ("C&D") in Florida, lacked the capacity to provide the full range of services specified in the proposal and did not submit a bid. Five waste companies, including BFI Waste Systems of North America, Inc. ("BFI") – a non-Florida corporation – did submit bids. Following a public hearing, the City awarded the contract to BFI, the lowest

2

bidder, and, as previously noted, an out-of-state corporation. SWS concedes that local firms enjoyed no preference or advantage in the bidding and selection process.

The City and BFI entered into a contract that provided that BFI would be the exclusive waste hauler in the City. The contract further provided that, while the City would set the rates for waste collection, BFI would directly bill and collect payment from the City's residents, and then transmit a 5% franchise fee to the City. The City codified the contract by municipal ordinance.

Sometime later, a customer to whom SWS supplied C&D removal services was cited for violating the ordinance, and SWS filed this action against the City and BFI challenging the ordinance and the underlying agreement between the City and BFI. SWS asked the court to declare that the exclusive franchise violated the Commerce Clause of the United States Constitution and to enjoin its enforcement as to C & D.[1] After Waste Management Inc. of Florida ("WM") purchased various assets of BFI and assumed BFI's rights and obligations under the contract and ordinance, it was substituted as a defendant.[2]

---

[1]SWS also asked for declaratory and injunctive relief for violation of the Equal Protection Clause and sought damages under 42 U.S.C. § 1983.

[2]At oral argument, SWS disavowed any intention to argue that the purchase of BFI by WM, an in-state waste hauler, transformed the initial selection of an out-of-state bidder into a selection of a local bidder.

The district court granted partial summary judgment to SWS on its claim for injunctive and declaratory relief, holding that the exclusive franchise agreement violated the Commerce Clause. After a stipulated dismissal of SWS's remaining claims and the City's counterclaim, the court entered final judgment and enjoined enforcement of the portions of the agreement and ordinance pertaining to C&D. We review this grant of summary judgment *de novo. Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

II.

The Commerce Clause of the United States Constitution empowers Congress to regulate commerce among the states in order to promote the free flow of goods and services across state lines. U.S. Const. Art. 1, § 8, cl.3. Conversely, the Commerce Clause also forbids a state or municipality from impeding the flow of goods and services across state borders, or from favoring in-state economic interests at the expense of out-of-state economic interests. *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 98 (1994). This "dormant" side of the Commerce Clause prohibits states or cities from "advancing their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949). Thus, if state or municipal regulations discriminate against out-of-state

4

companies in favor of local ones, they offend this dormant side of the Commerce Clause.[3]

In this case, SWS claims that the City's ordinance violates the dormant Commerce Clause because it awards the exclusive right to collect waste in the City to one company, thereby excluding *all* other companies – both interstate and intrastate – from waste collection. SWS relies for this claim on the Supreme Court's decision in *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994). In that case, the Court struck down a municipal ordinance that awarded exclusive rights to process all town solid waste to a single, privately owned local transfer station. 511 U.S. at 391.[4] The ordinance mandated that all waste haulers in the town transport their waste to the local station for processing. The Court held that such an arrangement constituted a "forced business transaction" that unconstitutionally favored the local processor, thereby discriminating against out-of-state interests. *Id.* at 391-92.

---

[3]Even regulations that do not discriminate on their face against interstate commerce must regulate even-handedly and impose only incidental burdens on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). As the district court held that the City's ordinance unconstitutionally discriminates against non-selected waste haulers, it did not reach this second step in its review of the ordinance.

[4]A local private contractor constructed the processing facility, agreeing to operate it for five years, after which the town would buy it for $1. During those five years, the contractor received the processing fees, at a certain level guaranteed by the town.

Following *Carbone*, waste haulers around the country challenged municipal waste collection agreements that awarded exclusive rights to collect waste to one hauler, arguing that their exclusivity constitutes a forced business transaction that offends the Commerce Clause. None was successful. *See Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178 (1st Cir. 1999); *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir. 1995); *Barker Sanitation v. City of Nebraska City*, No. 4:02CV3330, slip op. At 14-22 (D. Neb. Nov. 4, 2003); *Waste Management of Alameda County, Inc. v. Biagini Waste Reduction Sys. Inc.*, 74 Cal. Rptr. 2d 676 (Ca. Ct. App. 1998). *See also Harvey & Harvey, Inc. v. County of Chester*, 68 F.3d 788, 807 (3d Cir. 1995) (dormant Commerce Clause inquiry should focus "on the designation process, on the reasonableness of the duration of the designation and on the practical likelihood of [designation of] an out-of-state facility"). These courts all agreed that there is nothing inherently discriminatory in the award of an exclusive waste hauling contract. As the Second Circuit noted in *USA Recycling*:

> For ninety years, it has been settled law that garbage collection and disposal is a core function of local government in the United States. At their option, cities may provide garbage pick-up to their citizens directly . . . Or they may rely on a closely regulated private market to provide those services. . . . [W]e reject the plaintiffs' contention that

6

the *Carbone* decision fashioned from the "dormant" Commerce clause a new, and unprecedentedly sweeping, limitation on local government authority to provide basic sanitation services to local residents and businesses, on an exclusive basis and financed by tax dollars.

*Id.* at 1275-76.

The Commerce Clause forbids only the promotion of local economic interests over out-of-state interests. It does not forbid exclusive franchise agreements whereby a city selects one waste hauler to provide basic waste collection services to its citizens, so long as the bidding process is open to all, and there is no requirement that local interests be favored in the performance of the contract.[5] As the Second Circuit concluded in *USA Recycling:*

> There is no reason to assume that by shifting all hiring of garbage haulers into the hands of one buyer, the flow of interstate commerce will be reduced, and thereby burdened. In fact, the open bidding process used by the Town to hire a single garbage hauler could readily result in the hiring of an out-of-state garbage hauler – which would actually shift a portion of the garbage collection market *into* interstate commerce.

*Id.*

Indeed, in the instant case, the waste collection franchise was not only open to out-of-state competitors, but it was, in fact, awarded to one. There is nothing in the record to support the claim that the City's actions constituted the sort of "local

---

[5]The contract did not specify where BFI was to process or dispose of the waste.

economic protectionism" that the Commerce Clause forbids.  *Carbone*, 511 U.S. at 390.  We agree with the First Circuit that "to the extent that in-state and out-of-state bidders are allowed to compete freely on a level playing filed, there is no cause for constitutional concern."  *Houlton*, 175 F.3d at 189.  The  award of an exclusive waste hauling contract to the low bidder after a fair and open bidding process that has the effect of excluding all others for the term of the agreement does not, for this reason, offend the Commerce Clause.

Apparently recognizing this, SWS asserts that it is not just the selection of an exclusive waste hauler, but the failure to pay for those exclusive waste hauling services with tax dollars that is the City's constitutional error.  SWS argues that the City may not constitutionally require its residents to use a single waste hauler unless it eliminates the waste hauling market entirely by providing those services to its residents using *public* funds.  SWS reasons that because the City's ordinance provides that the contractor bill and collect payment from City residents, the City has not eliminated the market by using public funds to pay for waste collection.  Thus, SWS concludes, the City's franchise arrangement constitutes a "forced business transaction" between its residents and BFI/WM that excludes all other waste haulers, thereby violating the Commerce Clause.  Therefore, the real question in this case is whether the City's decision to allow BFI/WM to bill its

customers directly and rebate a fee to the City transforms an otherwise constitutional exclusive waste hauling contract into an unconstitutional forced business transaction.

We think not. We do not believe that the answer to the question whether the City's exclusive waste hauling agreement violates the Commerce Clause lies in its choice of billing method.

The First Circuit has reached the same conclusion in rejecting a similar challenge to an exclusive municipal waste hauling agreement that requires its residents to contract individually with the designated waste hauler. *Houlton*, 175 F.3d at 189. In *Houlton*, the First Circuit recognized that the town's decision to require its residents to individually contract for waste disposal added an element of the forced business transaction present in *Carbone*. The court, however, completely rejected the idea that *Carbone* requires the invalidation of such arrangements. To so suggest, according to the court, stretches the logic of the dormant Commerce Clause to the breaking point. *Id.* at 188. Instead, the court reasoned that the core purpose of the clause is to prevent economic protectionist policies, and that the relevant inquiry is whether the plan for their provision discriminates against non-local interests. In that inquiry, the critical question is not how waste hauling services are paid for, but how they are selected. *Id.* at 188-

89.  *See also Barker*, No. 4:02CV3330, slip op. at 14-22; *Biagini*, 74 Cal. Rptr. 2d at 682.

We agree that the critical issue is not whether direct billing by BFI/WM constitutes a forced business transaction, but whether the award of the contract discriminated in any way against non-local interests.  This means:

> [T]hat when the Commerce Clause inquiry focuses on a state or local plan that culminates in an award of an exclusive contract to one of several aspirants (actual or potential), the process by which the contractor is chosen assumes great importance in determining the plan's constitutionality *vel non*.  After all, in-state interests are not unduly pampered, nor out-of-state competitors unduly burdened, when a municipality awards an exclusive contract to a low bidder (from whatever state or region) after a fair and open bidding process.

*Id.* at 188.  Inasmuch as we have previously determined that the selection process in this case did not favor local interests, and in fact awarded the contract to an out-of-state company, we hold that it did not offend the dormant Commerce Clause.

### III.

Finding no discrimination forbidden by the Commerce Clause in the award or performance of the City's exclusive waste hauling agreement with BFI/WM, we shall reverse the judgment of the district court, vacate the injunction, and remand for further proceedings not inconsistent with this opinion.

REVERSED, VACATED, and REMANDED.