[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 19, 2009
THOMAS K. KAHN
CLERK

No. 08-14271
Non-Argument Calendar

_____

D. C. Docket No. 07-01598-CV-T-24-TGW

MOSHE LEIB,
doing business as TB Limo.Com,

                                        Plaintiff-Appellant,

versus

HILLSBOROUGH COUNTY PUBLIC TRANSPORTATION
COMMISSION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 19, 2009)

Before MARCUS, WILSON and PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

Moshe Leib ("Leib") appeals from the district court's dismissal of his suit,

brought under 42 U.S.C. § 1983, against the Hillsborough County Public Transportation Commission ("HCPTC," or "the Commission") for denying him permission to operate a Toyota Prius as one of the limousines offered by his transportation service. Leib argues that the HCPTC violated his due process and equal protection rights, and that the Commission's rules are unconstitutionally vague and impermissibly burden interstate commerce. The district court dismissed Leib's complaint under Rule 12(b)(6). After thorough review, we affirm.

## I.

Leib owns and operates TB Limo.com, a limousine service in the Tampa Bay area. Seeking to offer customers an "environmentally-friendly" alternative to traditional limousines, Leib bought a Prius. In order to operate the Prius as a limousine within Hillsborough County, Leib had to obtain a permit from the HCPTC, the administrative agency charged by the Florida State Legislature with regulating the operation of public vehicles on Hillsborough County's public highways. Act of May 25, 2001, Ch. 2001-299, § 2(1). The Commission denied Leib's request on the ground that the Prius did not qualify as a "luxury" vehicle, and thus did not meet the definition of "limousine" in HCPTC Taxi Rule 1.15, which states:

> "**Limousine**" means any motor vehicle for hire not equipped with a taximeter, with the capacity for 15 passengers or less, including the

driver. This definition consists of vehicles which are recognized by the industry as "luxury" vehicles, that are considered as high-end luxury vehicles by the manufacturer and vehicles that have been uniquely modified so as to provide "luxury" limousine service. The "luxury" quality of vehicles will be determined by assessing aesthetics of the interior and exterior of the vehicle, amenities provided to the passenger, spaciousness and comparison to current industry standards for vehicles performing limousine service in Hillsborough County.

Leib subsequently applied for a waiver of Rule 1.15's "luxury" requirement. At an August 2007 meeting, however, the HCPTC considered the request and denied it. The Commission based its decision on HCPTC Taxi Rule 15.5, which explains the circumstances under which waivers and variances are to be granted:

Variances and waivers shall be granted when the person subject to the rule demonstrates that the purpose of the underlying statute will be or has been achieved by other means by the person and when application of a rule would create a substantial hardship or would violate principles of fairness. For purposes of this section, "substantial hardship" means a demonstrated economic, technological, legal, or other type of hardship to the person requesting the variance or waiver. For purposes of this section, "principles of fairness" are violated when the literal application of a Rule affects a particular person in a manner significantly different from the way i[t] affects other similarly situated persons who are subject to the Rule.[1]

After his waiver request was denied, Leib filed the instant suit seeking an injunction allowing him to use his Prius as a limousine. The complaint alleges that the Commission violated his right to earn a living under the Fifth and Fourteenth

---

[1] The HCPTC made changes to certain of its rules that became effective on January 2, 2009. Minor changes were made to Rule 15.5's text but none of these is important for purposes of this opinion.

Amendments (Count I), and his right to equal protection under the Fourteenth

Amendment (Count II).  In addition, the complaint alleges that the Commission

violated Leib's right to due process by arbitrarily and capriciously denying his

request to use the Prius as a limousine (Count III), by exercising its police power

unlawfully (Count IV), and by granting "unbridled discretion" to administrative

officials (Count VI).  Finally, Leib's suit alleges that the Commission's rules are

unconstitutionally vague (Count V), and that they place an unconstitutional burden

on interstate commerce (Count VII).[2]  Each count asserts both a facial and an as-

applied challenge to the Commission's rules.

## II.

We review <u>de novo</u> the district court's grant of a Rule 12(b)(6) motion to

dismiss for failure to state a claim, accepting the allegations in the complaint as

true and construing them in the light most favorable to the plaintiff.  <u>Mills v.</u>

<u>Foremost Ins. Co.</u>, 511 F.3d 1300, 1303 (11th Cir. 2008).

We first reject Leib's argument that the district court erred in dismissing his

---

[2] In addition to the claims arising under § 1983, the complaint asserts a claim under Florida's Administrative Procedure Act, Fla. Stat. Ann. § 120.68.  Having dismissed all of Leib's federal claims, the district court declined to exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367.  Because we affirm the district court's dismissal of Leib's federal claims, we also find no abuse of discretion in the district court's decision not to retain jurisdiction over the state law claim.  <u>See, e.g.</u>, <u>Parker v. Scrap Metal Processors, Inc.</u>, 468 F.3d 733, 738 (11th Cir. 2006) (district court's decision not to exercise supplemental jurisdiction over state law claims is reviewed for abuse of discretion).

equal protection claim in Count II.[3]  The Equal Protection Clause requires the

government to treat similarly situated persons in a similar manner.  Gary v. City of

Warner Robins, Ga., 311 F.3d 1334, 1337 (11th Cir. 2002).  "When legislation

classifies persons in such a way that they receive different treatment under the law,

the degree of scrutiny the court applies depends upon the basis for the

classification."  Id.  If a law treats individuals differently on the basis of race or

another suspect classification, or if the law impinges on a fundamental right, it is

subject to strict scrutiny.  Eide v. Sarasota County, 908 F.2d 716, 722 (11th Cir.

1990).  Otherwise, the law need only have a rational basis -- i.e., it need only be

rationally related to a legitimate government purpose.  Id.

Because Leib makes no allegation that he belongs to a suspect class or that

the HCPTC's rules violate a fundamental right,[4] his equal protection claim is

---

[3] We begin with Count II of the complaint because Leib's appeal makes no mention of Count I (which alleged a violation of his right to earn a living under the Fifth and Fourteenth Amendments) and we accordingly deem Count I to have been waived.  Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (legal claims not briefed before the court are deemed abandoned).

[4] As noted previously, while Leib's complaint alleges a violation of his right to earn a living, he has abandoned that claim on appeal.  The claim would have failed in any event given our holding that employment rights do "not enjoy substantive due process protection" because such "rights are state-created . . . , not 'fundamental' rights created by the Constitution." McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994).  Nor does Leib claim that any of the other rights invoked in his complaint are fundamental.  On the contrary, all of his arguments on appeal presuppose that his claims are subject only to rational basis review.

5

subject only to rational basis review.  The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it.  Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir. 1991).  This standard is easily met.  As the Supreme Court has held, under rational basis review, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification."  Heller v. Doe by Doe, 509 U.S. 312, 320 (1993).  Rather, a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record.  Id.  Under rational basis review, a court must accept a legislature's generalizations even when there is an imperfect fit between means and ends.  Id.

Rule 1.15 easily survives rational basis review.  Because Leib does not contest the government's power to regulate public transportation, we need consider only whether the Rule, and in particular its "luxury" requirement, has any rational basis.  We agree with the district court that a multitude of rational bases might be adduced in support of the requirement.  Thus, for example, without the requirement, any old jalopy might be passed off as a limousine.  The luxury requirement is rationally related to preventing such misrepresentations and

6

confusion. Leib contends that the district court erred by failing to accept the allegations in his complaint as true, but this is simply incorrect. Quite to the contrary, the court concluded that, even assuming that all of his allegations were true, Leib was unable to show that Rule 1.15 and its luxury requirement lacked a rational basis.

We also reject the "class of one" equal protection argument asserted in Count II alongside Leib's traditional equal protection claim. A "class of one" equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1032 n.1 (11th Cir. 2008) (quoting Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007)). To prove a "class of one" claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him. Id. at 1045. Leib's "class of one claim" fails to meet either requirement.

With respect to the first prong, we have frequently noted that the "similarly situated" requirement must be rigorously applied in the context of "class of one"

claims.  See, e.g., Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008); Griffin, 496 F.3d at 1207.  Employing "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties."  Griffin, 496 F.3d at 1203. Indeed, even in run-of-the-mill discrimination cases, we have emphasized that plaintiffs are not permitted simply to "rely on broad generalities in identifying a comparator."  Id. at 1204.

Furthermore, we have observed that where the challenged governmental decision is simple or one-dimensional -- for example, where the decision involves the application of a single criterion to a single issue -- making out a "class of one claim" is generally easier than in cases where governmental action is "multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time."  Id. at 1203; cf. Engquist v. Oregon Dep't of Agric., 128 S. Ct. 2146, 2153 (2008) (noting the difficulty of establishing "class of one" equal protection claims where discretionary authority is exercised "based on subjective, individualized determinations").  The decisions at issue in this case are of the latter variety because the Commission's determinations concerning Rule 1.15's "luxury" requirement involve the

8

discretionary application of a variegated set of factors (e.g., aesthetic considerations, comparison with industry standards). In short, establishing a "class of one" equal protection claim can be an onerous task, and properly setting forth a "class of one" claim should not be regarded as a perfunctory matter.

Leib's "class of one" claim undeniably falls far short of the mark. Indeed, his complaint makes only the barest conclusory assertion that the HCPTC's rules "unreasonably required the Plaintiff to submit to controls not imposed on other similarly situated businesses or properties." Given the complaint's complete lack of factual detail regarding the "similarly situated" requirement, Leib's "class of one" claim was properly dismissed.

## III.

Leib's substantive due process claims fare no better than his equal protection claims. Indeed, because they are so poorly developed, the substantive due process claims fare worse. In Count III, for example, Leib asserts that the Commission's rules and decisions were "arbitrary and capricious." Although Leib appears to regard this as a straightforward substantive due process claim, the precise basis for the "arbitrary and capricious" cause of action is uncertain. In advancing the claim, he cites only our decision in Eide v. Sarasota County, 908 F.2d 716 (11th Cir. 1990). While Eide indeed recognized an "arbitrary and capricious due process

9

claim" as one of several closely related substantive due process claims, the dispute at issue in that case involved a zoning ordinance. We specifically "consider[ed] only the standards that would be applied to a claim which involves a grievance similar to Eide's," and we expressly refrained from offering any "opinion as to what the standards would be for other types of claims such as physical taking and procedural due process claims." Id. at 720 n.6. Leib's failure to articulate the basis of his arbitrary and capricious due process claim is a sufficient ground for its dismissal. See, e.g., Tyler v. Runyon, 70 F.3d 458, 465 (7th Cir. 1995) ("[I]f an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation.").

Even putting aside its uncertain doctrinal basis, Leib's arbitrary and capricious due process claim fails. Like equal protection claims, substantive due process claims are subject to rational basis review, so long as they do not infringe fundamental rights and are not discriminatory. In re Wood, 866 F.2d 1367, 1371 (11th Cir. 1989) ("The standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the 'rational relationship' test for evaluating equal protection claims."). Since the Commission's rules survived rational basis review for purposes of Leib's equal protection claim, it

10

follows a fortiori that the rules survive rational basis review here as well.

Against this, Leib again contends that the district court dismissed his arbitrary and capricious claim because it failed to accept the allegations in his complaint as true. Specifically, he claims that the complaint's "allegations of his vehicle's safety, the fact that the Prius can operate on the highways of Hillsborough County under the 'taxicab' label, and the emergence of the Prius as a limousine in major metropolitan areas, assuming such allegations are accepted as true, show that the challenged regulations are not substantially related to the public health, safety, morals, or general welfare." But the test is not whether the luxury Rule is substantially related to health, safety, or the general welfare; it is whether the Rule is rationally related to a legitimate governmental purpose. Id. Moreover, as explained above, Leib is simply incorrect in asserting that the district court failed to accept his allegations as true.

## IV.

The foregoing line of analysis also applies to Leib's police power claim in Count IV. Leib argues that the Commission unlawfully exercised its police power by adding the "luxury" requirement to the definition of "limousine" in Rule 1.15. It is true that the definition of "limousine" in the HCPTC's enabling act does not include a luxury requirement. Act of May 25, 2001, Ch. 2001-299, § 3(17)

(defining "limousine" as "any motor vehicle for hire not equipped with a taximeter, with a capacity for 15 passengers or less, including the driver"). But this hardly suggests that the requirement is contrary to the legislature's intent. Rather, in creating the Commission, the legislature gave it the authority to "[r]egulate and supervise the operation of public vehicles upon the public highways and in all other matters affecting the relationship between such operation and the traveling public." Id. § 5(1)(a). In adding the luxury requirement to the definition of "limousine," the HCPTC's was doing precisely what it was created to do.

Leib further contends that the luxury requirement fails rational basis review, arguing that luxury vehicles are no safer than non-luxury vehicles, and that, as a result, there is no rational relationship between the luxury requirement and public safety. But the Commission need not show that luxury vehicles are always safer than other vehicles; it need only show a rational relationship between luxury and safety (say, on the theory that luxury vehicles are generally larger and that larger vehicles are generally safer). The Rule survives rational basis review even if it "seems unwise . . . or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996). More importantly, there is no need to show that the Rule specifically promotes safety, so long as it promotes the general welfare or some other legitimate governmental aim. We are therefore unpersuaded by Leib's police

12

power claim and conclude that the district court was correct to dismiss it as well.

## V.

We are also unpersuaded by Leib's claim in Count VI that Rule 15.5 gives the Commission "unbridled discretion" in the enforcement of its rules. As noted above, Rule 15.5 provides that "[v]ariances and waivers shall be granted when the person subject to the rule demonstrates that the purpose of the underlying statute will be or has been achieved by other means," or "when application of a rule would create a substantial hardship or would violate principles of fairness." Leib argues that "the purpose of the underlying statute" is too nebulous a standard to provide any guidance in ruling upon waiver requests, and that the Rule therefore gives the Commission unbridled discretion in making decisions. We disagree.

As an initial matter, we note once again that Leib fails to articulate the precise nature of this claim or to indicate the way in which it differs from other claims asserted in the complaint. Cf. Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 388 (5th Cir. 2008) (although asserted independently, plaintiffs' "unbridled discretion" claim was not distinct from their equal protection and due process claims). In particular, it is difficult to distinguish Leib's "unbridled discretion" claim from his void-for-vagueness claim. Leib's chief argument in support of the unbridled discretion claim is that the "purpose of the underlying statute" standard

13

is too nebulous for people of ordinary intelligence to comply with -- which, as is discussed more fully in the next section, is the gravamen of a void-for-vagueness claim. Yet Leib separately advances a void-for-vagueness claim in Count V the complaint. In short, as with his arbitrary-and-capricious due process claim, Leib has not asserted his "unbridled discretion" claim clearly enough to permit our review. See, e.g., Tyler, 70 F.3d at 465.

Yet even on the merits, Leib's unbridled discretion claim is unpersuasive. His argument in support of the claim rests almost entirely on VFW John O'Connor Post #4833 v. Santa Rosa County, Fla., 506 F. Supp. 2d 1079 (N.D. Fla. 2007). There, a zoning ordinance provided that a requirement could be waived "upon a proper showing," but gave no further guidance as to what might count as such a showing. The district court held that the "proper showing" standard was void for vagueness because it was not "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Id. at 1092 (internal quotation omitted).

Leib argues that Rule 15.5's "purpose of the underlying statute" waiver standard is no more definite than the "proper showing" waiver standard of the local zoning ordinance examined in VFW John O'Connor. We disagree. The "underlying statute" to which Rule 15.5 alludes -- the enabling act under which the

14

HCPTC was created -- gives substance to the "purpose of the underlying statute" standard. At the most general level, for example, the statute makes clear that the Commission was established to ensure the orderly and efficient "operation of public vehicles upon the public highways of Hillsborough County and its municipalities." See Act of May 25, 2001, Ch. 2001-299, § 2(1). Plainly, granting waivers will be consistent with the orderly regulation of public vehicles in some circumstances but not in others. In this case, for example, granting Leib a dispensation from Rule 1.15's requirements might well undermine orderly and efficient regulation because the Prius simply does not have the features necessary to qualify as a limousine. If Leib were granted a waiver, it is unclear why a waiver should not be given for virtually any other vehicle.

Moreover, Leib ignores the fact that the "purpose of the underlying statute" is only one of the criteria mentioned in Rule 15.5. The Rule goes on to say that a waiver may be granted when application of a rule would "create a substantial hardship" or would "violate principles of fairness." Notably, Leib does not contest the definiteness of either of the latter standards. Indeed, the Rule goes on to define "substantial hardship" as "a demonstrated economic, technological, legal, or other type of hardship to the person requesting the variance or waiver," and to explain that "principles of fairness" are violated "when the literal application of a Rule

15

affects a particular person in a manner significantly different from the way i[t] affects other similarly situated persons who are subject to the Rule." Even assuming that the "purpose of the underlying statute" criterion left the Commission with potentially too much discretion when considered in isolation, the Commission's discretion cannot be considered unbridled in light of the additional limits imposed by the "substantial hardship" and "principles of fairness" standards. Hence, the district court was correct in dismissing Leib's "unbridled discretion" claims.

## VI.

For largely the same reasons, we reject Leib's suggestion in Count V that the term "luxury" in Rule 1.15 is unconstitutionally vague. To overcome a vagueness challenge, statutes must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and "must provide explicit standards for those who apply them." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). The Supreme Court has explained that the "degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982). In particular, the Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the

16

consequences of imprecision are qualitatively less severe." Id. at 498-99. Indeed, a civil statute is unconstitutionally vague only if it is so indefinite as "really to be no rule or standard at all." Seniors Civil Liberties Ass'n, Inc. v. Kemp, 965 F.2d 1030, 1036 (11th Cir. 1992).

Rule 1.15 is not unconstitutionally vague. Consumers and travelers have a common-sense understanding of what counts as a "limousine" and what counts as a "luxury" vehicle. Rule 1.15 gives these concepts even further content and meaning by specifying additional criteria -- the vehicle's interior and exterior aesthetics, its spaciousness, the amenities it provides to passengers, its comparison to current industry standards -- in terms of which "luxury" is to be judged. True, there is an inherent degree of imprecision in making "aesthetic" judgments. But "the Constitution does not require precision; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding." This That and Other Gift & Tobacco, Inc. v. Cobb County, Ga., 285 F.3d 1319, 1325 (11th Cir. 2002) (internal quotation marks omitted). The Commission's definition of "luxury" easily meets this standard. Accordingly, the district court properly dismissed Leib's void-for-vagueness claim.

## VII.

Lastly, we reject Leib's contention in Count VII that the HCPTC's rules

17

impose an unreasonable burden on interstate commerce. The Constitution's Commerce Clause gives Congress the power to regulate commerce among the states. U.S. Const. art. 1, § 8, cl. 3. Correlatively, "the Commerce Clause also forbids a state or municipality from impeding the flow of goods and services across state borders, or from favoring in-state economic interests at the expense of out-of-state economic interests." S. Waste Sys, LLC. v. City of Delray Beach, Fla., 420 F.3d 1288, 1290 (11th Cir. 2005). Since prearranged public transportation services constitute a form of interstate commerce, the HCPTC's regulations would be unconstitutional if they somehow burdened interstate commerce. Nat'l Solid Wastes Mgmt. Ass'n v. Alabama Dep't of Envtl. Mgmt., 910 F.2d 713, 719-20 (11th Cir. 1990). The first step in assessing violations of the Commerce Clause is to consider whether the law or regulation in question represents an overt form of protectionism, in which case the measure is generally invalid per se. City of Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978). However, where a statute or rule "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

HCPTC Rule 1.15 is not an overtly protectionist measure. On its face, the

18

Rule purports merely to regulate travel in the Tampa Bay area. We doubt whether the Commission's rules place <u>any</u> special burden on interstate commerce at all. Leib emphasizes that under the rule "***all*** passengers (including those engaged in interstate commerce) are ***prohibited*** from utilizing the economical and environmentally-friendly transportation services offered by Leib's Toyota Prius, thereby constituting an unreasonable burden on interstate commerce." But this suggests that Rule 1.15 burdens in-state and out-of-state commerce equally. Indeed, as the Commission points out, the Rule has not been challenged by an out-of-state business. Rather, Leib purports to challenge the Rule from within the state that is the supposed beneficiary of the putative burden on interstate commerce.

Moreover, Leib's argument rests on a factual mistake: he argues that "environmentally-friendly passengers that desire to utilize ecologically superior transportation are left with no alternative options whatsoever as a result of the HCPTC's complete prohibition of eco-friendly vehicles for use as limousines." This is simply false: an environmentally-friendly vehicle may qualify as a limousine so long as it meets Rule 1.15's luxury and other requirements. Accordingly, Leib's interstate commerce claim was properly dismissed.

In sum, we conclude that the district court properly dismissed Leib's complaint.

**AFFIRMED.**