[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14978
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-81298-KAM

JULIAN BIVINS,
as personal representative of the ancillary Estate of Oliver Wilson Bivins,

Plaintiff - Appellant,

versus

KEITH B. STEIN,
BEYS LISTON MOBARGHA & BERLAND LLP,
f.k.a. Beys Stein Mobargha and Berland, LLP,
LAW OFFICES OF KETIH B. STEIN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 20, 2018)

Before MARCUS, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Julian Bivins ("Julian") appeals from the denial of a motion for a new trial after a jury found defendant Keith Stein ("Stein") not liable on negligence and breach-of-fiduciary-duty claims. Julian is the personal representative of the ancillary estate of Oliver Wilson Bivins ("Oliver Sr." or "the ward"), Julian's father. Oliver Sr. died in 2015, at which point Julian became the representative of Oliver Sr.'s estate. At trial, the jury ruled in Julian's favor on claims he had brought against certain defendants for the way they had handled Oliver Sr.'s property, but the jury ruled in Stein's favor on the claims leveled against him.[1] On appeal, Julian argues that: (1) the district court erroneously prevented his expert from testifying at trial; (2) Stein's expert was erroneously allowed to testify at trial; (3) the Florida state attorney-client privilege, as it applies in the guardian-ward context, was not applicable to certain documents concerning Stein; and (4) Florida's attorney-client privilege violates the Equal Protection Clause. After thorough review, we affirm.

I.

The relevant background is this. Julian was Oliver Sr.'s child from his first marriage. Oliver Sr. and his second wife, Lorna Bivins, divorced in 2010.

---

[1] The defendants at trial belonged to three groups: Oliver Sr.'s guardians who were appointed after he was declared incapacitated; attorneys representing the guardians in Florida litigation; and the appellee here, Keith Stein, who represented the guardians in relation to property issues in New York, New York. The Florida attorneys were found liable at trial. The guardians either settled or had their cases dismissed prior to trial. Only the claims against Stein are at issue in this appeal.

Petitions to determine incapacity for Oliver Sr. and Lorna were filed in 2011, which led to Stephen Kelly, and later Curtis Rogers, being appointed as the guardian of their person and property. Kelly was temporary guardian for Oliver Sr. in 2011, but Rogers was appointed as permanent guardian after Kelly. Kelly replaced Rodgers as permanent guardian in 2014.

Stein was hired as a real estate attorney to address issues related to property located at 808 Lexington in New York. According to Stein's trial testimony, this included issues related to title and partition, a delinquent mortgage, the potential sale of 808 Lexington, and potential litigation. Julian claimed in the instant suit that Stein was negligent and committed malpractice by, among other things, failing to perform due diligence on the value of the properties, failing to advise on certain issues, and giving advice to the guardians that was harmful to the ward's interests.

At trial, Julian sought to call Irwin Gilbert, a litigator from South Florida, as an expert witness. Defense counsel made a motion to strike Gilbert's report and exclude his testimony, which the district court later granted. For its part, the defense put up Edward Robbins as an expert. Julian raised objections for the first time at trial about Robbins' qualifications to discuss guardianship or fiduciary matters. On Julian's objection, the district court limited Robbins' testimony to matters of property law.

The jury ultimately found Stein not liable, and Julian's motion for a new trial was denied. This timely appeal, concerning the claims against Stein, follows.

II.

"We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion. Indeed, the deference that is the hallmark of abuse-of-discretion review requires that we not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous. Thus, it is by now axiomatic that a district court enjoys considerable leeway in making these determinations." United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quotations and citations omitted). "[W]e must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id. at 1259.

We review the constitutionality of a statute de novo. United States v. Ambert, 561 F.3d 1202, 1205 (11th Cir. 2009). We also review de novo the district court's determination of the applicability of the attorney-client privilege. In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992). However, we generally do not consider an issue not raised before the district court. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

III.

4

First, we are unpersuaded by Julian's claim that the district court abused its discretion by excluding his expert, Irwin Gilbert. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Frazier, 387 F.3d at 1259. In determining whether to admit expert testimony, trial courts must consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir.1998) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)).

Julian has offered us nothing to conclude that the district court abused its discretion in excluding Gilbert as an expert. For starters, the language used by the court in its order, and on the record, reveal that it made no errors of law by relying on the requirements of Rule 702 or Daubert. Nor can we say that the district court committed clear error when it found that Gilbert needed more "specific experience in the area [he was] dealing with." We note that neither Julian nor Gilbert has made clear about which topics Gilbert sought to provide expert testimony concerning Stein; he never differentiated in his expert report how Stein allegedly failed any fiduciary duties related to property law. The record reflects that Gilbert had litigated numerous breach-of-fiduciary-duty cases involving issues about

5

establishing guardianship, representing guardians, and removing guardians. Some of the cases involved issues about the duties attorneys owe guardians, and the wards of those guardians. Gilbert, notably, was not a specialist in New York real estate law, and the only New York property issues he had handled in the last five years were lease disputes.

This case, however, involved the duties Stein would have owed the guardians and Oliver Sr. in Stein's particular scope of employment, which was to assist in handling properties in New York. And, as the district court explained, Gilbert is primarily a business commercial litigator who has only dabbled in the area of guardianship; although Gilbert may understand the duties of an attorney representing a guardian, he does not have the experience to know how a guardian is supposed to act or how an attorney for a guardian is supposed to act in the context of property law. Because Gilbert appears to lack the relevant experience for the issues involved in this case, we cannot say the district court abused its considerable discretion by excluding Gilbert as an expert at trial.

As for Julian's claim that the district court failed to perform its gatekeeping functions by not properly explaining its reasoning for excluding Gilbert, we disagree. While the district court's order excluding Gilbert contained just one long sentence setting out Gilbert's lack of qualifications as the basis for exclusion, this was not the only place where the court set out its reasoning on the record.

Plaintiff's counsel made a renewed request to have Gilbert testify after the district court entered its order.  The district court then engaged in a lengthy explanation on the record as to the basis of its ruling, which as we've already noted, concluded that Gilbert's experience in litigating some guardianship cases was not enough to qualify him as an expert for standards in this case, which involved both guardianship and property law.

Julian cites two pieces of non-binding authority -- Busch v. Dyno Nobel, Inc., 40 F. App'x 947 (6th Cir. 2002), and Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083 (10th Cir. 2000) -- but in both cases, the only statements the district courts made on the record were conclusory rulings or recitations of the governing law.  Here, by contrast, the district court made sufficient findings on the record during Julian's re-argument of the issue about why Gilbert's qualifications were inadequate.  Julian may disagree with these findings, but the district court satisfied its obligations.

We also are unconvinced by Julian's argument that the district court abused its discretion by admitting Stein's witness, Edward Robbins, as an expert. Notably, Julian failed to raise his objections to Robbins pre-trial, but the district court nevertheless entertained them at trial, and limited Robbins to only discussing standards for real estate practices.

7

Julian now argues that Robbins went beyond the scope of merely testifying about real estate.  But Julian mischaracterizes the record.  Rather, Robbins discussed what actions Stein, as a property attorney, was responsible for, which is not an opinion on guardianship or fiduciary matters.  At one point, Robbins did briefly mention guardianship, but Julian objected, and the district court instructed the witness to "[j]ust talk about real estate."  Thus, the district court did not err, much less abuse its discretion -- it correctly limited Robbins' testimony to his area of expertise at the outset, and on Julian's objection on one single occasion, reined Robbins' testimony back to property law.

Julian adds that these brief moments in a long trial somehow affected his substantial rights, and that defense counsel stressed the absence of expert testimony from the plaintiff about guardianship during closing argument, which "seal[ed] the defense verdict for Stein."  However, Robbins never actually opined on guardianship matters.  Robbins was properly admitted to give an opinion on the actions and standard of a property law attorney, and his testimony did not go beyond that.  Because Robbins did not testify as an expert about guardianship matters, we cannot conclude that Julian's inability to rebut it with his own expert testimony resulted in any harm to Julian's substantial rights.

IV.

8

Similarly, we find no merit to Julian's challenges to Florida's statute on attorney-client privilege, which he makes for the first time on appeal. Because Julian did not raise his arguments about the attorney-client privilege before the district court, we need not consider them. See Access Now, 385 F.3d at 1331.

But even if we were to consider his claim, they lack merit. Under Florida law, the attorney-client privilege exists between the guardian and the guardian's attorney, and does not belong to the ward, which means that the attorney-client relationship here exists between Stein and the guardians. See Fla. Stat. § 90.5021(2) ("A communication between a lawyer and a client acting as a fiduciary is privileged and protected from disclosure under [this section] to the same extent as if the client were not acting as a fiduciary. In applying [this section] to a communication under this section, only the person or entity acting as a fiduciary is considered a client of the lawyer.").

As for Julian's claim that the attorney-client privilege does not apply to communications that occurred before Stein was officially hired as an attorney, thus entitling him to "all communications involving Stein before October 22, 2012," he is incorrect. The attorney-client privilege applies to confidential communications between an attorney and a client for the purposes of obtaining legal advice. Drummond Co. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1334 (11th Cir. 2018). That includes prospective clients who seek legal advice, but have not yet formally

9

retained the attorney.  MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550, 582 n.132 (S.D. Fla. 2013) (citing Nat'l W. Life Ins. Co. v. Walters, 216 So.2d 485, 486 (Fla. Dist. Ct. App. 1968)).

Nor is there merit to Julian's claim that Stein misused the attorney-client privilege.  It is true that litigants cannot use the privilege to selectively disclose self-serving information while prejudicing the another party's case.  Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994).  Thus, a client can implicitly waive the privilege by impermissibly using it as a sword.  Id.  But, Stein, as the attorney, did not own the privilege, and could not have waived it through his conduct.

Finally, we reject Julian's claim that Fla. Stat. § 90.5021 violates the Equal Protection Clause because it treats incapacitated wards differently than other classes of clients.  The Equal Protection Clause prohibits states from denying individuals the equal protection of the laws. U.S. Const. amend. XIV, § 1.  This means that state governments must treat similarly situated people similarly.  Leib v. Hillsborough Co. Public Transp. Comm'n, 558 F.3d 1301, 1305 (11th Cir. 2009) (citation omitted).  "If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny.  Otherwise, the law need only have a rational basis -- i.e.,

it need only be rationally related to a legitimate government purpose." Id. at 1306 (citation omitted).

Julian has identified no protected class or fundamental right at issue here, so the rational basis test applies. Rational basis review asks if the government can regulate the area in question, and whether there is a rational relationship between the government's objective and chosen means to achieve it. Id. Statutes are presumed constitutional, which means the burden is on Julian to "negate every conceivable basis that might support it, even if that basis has no foundation in the record." Id. (citation omitted).

Julian has not met this heavy burden.[2] And, indeed, there are plenty of rational bases to uphold Florida's rule. The Florida legislature may rationally believe that guardians need the privilege to secure candid advice from attorneys. Or, it may rationally believe that the interests of wards are best served by having the guardian step into the legal position of the ward. Since Julian has failed to negate "every conceivable basis" for upholding § 90.5021, his Equal Protection claim fails. Id.

**AFFIRMED.**

---

[2] To the extent Julian claims it is Stein's burden to set forth a rational basis, he is incorrect -- it is Julian's burden and Julian's alone.

11