[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10276

Non-Argument Calendar

_____

ANGEL E. GASTON,

                                                    Plaintiff-Appellant,

*versus*

CITY OF LEESBURG,
In their official capacity,
LAKE COUNTY FLORIDA,
In their official capacity,
JOSEPH IOZZI,
In his individual and official capacity,
NICHOLAS M. ROMANELLI,
In his individual and official capacity,
D. V. PAONESSA,

2                    Opinion of the Court                    24-10276

In his individual and official capacity, et al.,

Defendants-Appellees,

PEYTON C. GRINELL et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:23-cv-00056-PGB-PRL

_____

Before NEWSOM, BRANCH, and ANDERSON Circuit Judges.

PER CURIAM:

Angel E. Gaston appeals the district court's order dismissing his *pro se* second amended complaint, which brought claims under 42 U.S.C. §§ 1983 and 1985, as well as Florida law, arising out of his October 27, 2020, arrest. Gaston asserts that the district court erroneously dismissed his federal claims—for First Amendment retaliation, malicious prosecution, selective enforcement, civil-rights conspiracy, and failure to train—for failure to state a claim. Gaston also contends that the district court erroneously declined to exercise supplemental jurisdiction over his state-law claims. Because

none of his arguments are persuasive, we affirm the decision of the district court.

The facts are known to the parties, and we repeat them here only as necessary to decide the case.

## I

We review de novo a district court's sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915A(b)(1). *Harden v. Pataki*, 320 F.3d 1289, 1292 (11th Cir. 2003).

Section 1983 provides a cause of action for private citizens against persons acting under color of state law for violating their constitutional rights and other federal laws. 42 U.S.C. § 1983; *see also Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that municipalities are "persons" for purposes of 42 U.S.C. § 1983).

To state a § 1983 First Amendment retaliation claim, a plaintiff must allege facts making it plausible that: (1) his speech was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there is a causal connection between the retaliatory conduct and the protected speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

In *Nieves v. Bartlett*, the Supreme Court held that the existence of probable cause to arrest bars a retaliatory arrest claim as a matter of law. *See* 587 U.S. 391, 400–04 (2019). But the Court carved out one exception. If a plaintiff can present objective

evidence that he was arrested when otherwise similarly situated individuals would not have been, the plaintiff may still pursue a retaliatory arrest claim as if probable cause did not exist. *Id.* at 406–08. The plaintiff does not need a "virtually identical and identifiable" comparator. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). But the evidence must be objective. *Id.* Evidence that no one had ever been arrested in a certain jurisdiction for a certain kind of conduct can satisfy the *Nieves* exception. *Id.*

"Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant *could* have believed that probable cause existed to arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (quotation marks omitted, alteration adopted). Still, an officer may not "unreasonably and knowingly disregard or ignore evidence or refuse to take an obvious investigative step that would readily establish that they lack probable cause to arrest a suspect." *Harris v. Hixon*, 102 F.4th 1120, 1129 (11th Cir. 2024).

Under Florida law, it is illegal for a person to be present on state or county property while "wearing any mask, hood, or device whereby any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer" if that person intends to "intimidate, threaten, abuse, or harass any other person." Fla. Stat. §§ 876.13, 876.155(3). At the time of Gaston's arrest, it was also illegal to carry a concealed knife without a license. Fla. Stat. § 790.01 (2015); *id.* § 790.001(3)(a) (2016).

Here, the district court did not err in dismissing Gaston's First Amendment retaliation claim because the existence of probable cause to arrest him bars it as a matter of law. *Nieves*, 587 U.S. at 404. And Gaston does not meet the *Nieves* exception because he failed to plead objective examples that showed that he was arrested when otherwise similarly situated individuals would not have been. *Gonzalez*, 602 U.S. at 658; *Nieves*, 587 U.S. at 404.

As to his charge for wearing a mask in public to conceal his identity, Gaston's assertion—that providing his name to the police operator upon his arrival proves that he was not concealing his identity—is unavailing. Even if Gaston's identity was known to Lieutenant Romanelli and the police operator, it was still reasonable for Romanelli to determine that Gaston tried to conceal his identity from others outside the police station. *See Gates*, 884 F.3d at 1298. As Romanelli noted in his probable-cause affidavit, Gaston's attire that day—a "black sparring helmet with a clear to off-white face protector," and underneath that, a camouflage face covering which revealed only his eyes—went far beyond the typical mask that individuals wore during the COVID-19 pandemic. *See id.* Thus, Gaston's open carrying of weapons, combined with his decision to cover nearly his entire head and face, made it reasonable for Romanelli to conclude that Gaston concealed his identity to intimidate or harass others, in violation of Florida law. Fla. Stat. §§ 876.13, 876.155(3); *see Gates*, 884 F.3d at 1298.

As to his charge for carrying a concealed weapon, even granting Gaston's assertion that the steak knife was stored in the

sheath on his hip, it was still reasonable for Romanelli to conclude that the knife was concealed.  From Romanelli's vantage point when exiting his vehicle, which was approximately 30 to 40 feet away from Gaston, it is reasonable that he would not have realized that the smaller steak knife was stored alongside the machete in a sheath that was designed specifically for the larger weapon.  *See Gates*, 884 F.3d at 1298.  Thus, because the knife was not visible to Romanelli when he first observed Gaston—and only became visible after Romanelli told Gaston to drop his weapons—Gaston plausibly violated Florida law.    Fla. Stat. § 790.01 (2015);  *id.* § 790.001(3)(a) (2016); *id.* § 790.02 (2024).

## II

"To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution."  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  "The constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023) (quotation marks omitted, alterations adopted).  A Fourth Amendment claim for malicious prosecution adds two more elements: (5) the legal process justifying the seizure must be constitutionally infirm; and (6) the seizure would be unjustified without legal process.  *Id.* at 1111–12.  Qualified immunity adds a seventh

element—the law must be "clearly established." *Id*. at 1112 (quotation marks omitted).

Here, Gaston cannot establish his malicious prosecution claim because he cannot show that prosecution occurred both without probable cause and with malice. *Id*. at 1111; *Wood*, 323 F.3d at 881. As already explained, the record supports that the Leesburg Police Department ("LPD") officers acted with arguable probable cause. *Butler*, 85 F.4th at 1111. Gaston also does not point to, and the record does not reveal, any evidence that the officers acted with malice. *Id*.

### III

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). The proper remedy for selective enforcement is a claim under the Equal Protection Clause, not the Fourth Amendment. *See id*. The Equal Protection Clause directs "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. *See Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006). The Supreme Court has recognized that equal protection claims may be brought by a "class of one" when the plaintiff alleges that (1) he was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the differential treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

(quotation marks omitted).  "To be similarly situated, the comparators must be *prima facie identical in all relevant respects*."  *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation marks omitted).  "[P]laintiffs are not permitted simply to rely on broad generalities in identifying a comparator."  *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (quotation marks omitted).  A "class of one" plaintiff could fail to state a claim by leaving out critical facts in alleging that he is similarly situated to another.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (quotation marks omitted).

Here, Gaston failed to allege facts showing that he was intentionally treated differently from others similarly situated absent a rational basis.  *See Village of Willowbrook*, 528 U.S. at 564.  In his second amended complaint, Gaston identified the following situations with potential comparators: (1) protestors in Florida who wore masks during the COVID-19 pandemic; and (2) protestors in Washington D.C. who wore face coverings and tactical military gear on January 6, 2021.  Both comparators fail to persuade.

As to the first situation, Gaston failed to allege that other protestors in Florida, who wore masks and carried weapons, were treated differently.  *See Grider*, 618 F.3d at 1264; *see also Leib*, 558 F.3d at 1307; *Griffin Indus., Inc.*, 496 F.3d at 1205.  Moreover, the district court's finding that the LPD officers acted with arguable probable cause when they arrested Gaston undermines his claim that the officers lacked a rational basis to treat him differently from

other masked protestors in Florida during the pandemic.  *See Village of Willowbrook*, 528 U.S. at 564.

As to the second situation, Gaston's comparison to the January 6 protestors in Washington, D.C. also fails because those individuals were not similarly situated as they were not subject to Florida laws.  *See Grider*, 618 F.3d at 1264.

## IV

Section 1985 covers conspiracies to interfere with civil rights.  *See* 42 U.S.C. § 1985(3); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996).  Subsection (3) of § 1985 provides a cause of action to victims of a conspiracy to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.  42 U.S.C. § 1985(3).  The elements of a § 1985(3) cause of action are:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree*, 92 F.3d at 1146–47.

To prove the second element, a plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus" motivates the conspirators' actions. *Id.* at 1147 (citation and quotation marks omitted).

Here, Gaston failed to state a § 1985(3) claim because he failed to allege that any "racial, or perhaps otherwise class-based, invidiously discriminatory animus" motivated the LPD officers' actions. *See id.* (quotation marks omitted). Instead, Gaston alleged that the officers arrested him because they were irritated that his protest interrupted the officers' attendance at a funeral.

## V

To impose 42 U.S.C. § 1983 liability on a local government entity, a plaintiff must show that: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff must identify either (1) an officially promulgated local policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). The plaintiff must prove the existence of such a custom, not through one incident, but by evidence of a "longstanding and widespread practice . . . deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).

Here, the district court did not err in dismissing Gaston's failure to train claim because he failed to show that the LPD violated his constitutional rights or that the LPD had a custom or

policy that constituted deliberate indifference to these rights. *McDowell*, 392 F.3d at 1289. As already explained, the officers had arguable probable cause to arrest Gaston, so the arrest did not violate his constitutional rights. *Id.* Gaston also failed to cite to an officially promulgated LPD policy that constituted deliberate indifference to his rights. *Id.*; *Grech*, 335 F.3d at 1329. Gaston further failed to plead facts to support his assertion that the City of Leesburg's policymakers failed to train its officers not to commit *Brady* violations or violate citizens' constitutional rights. *City of Fort Lauderdale*, 923 F.2d at 1481. Although Gaston alleged that the LPD's refusal to provide body cameras to its officers constituted deliberate indifference, he failed to point to any incident where this alleged custom led to the deprivation of someone's rights, which would have put city officials on notice that training was needed. *See McDowell*, 392 F.3d at 1289; *see also City of Fort Lauderdale*, 923 F.2d at 1481.

## VI

A district court's decision not to exercise supplemental jurisdiction is reviewed for an abuse of discretion. *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1313 (11th Cir. 2008). A federal district court may have supplemental jurisdiction over all claims that form part of the same case or controversy as claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over related claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

Here, because the district court properly dismissed Gaston's federal claims for relief, the court did not abuse its discretion in declining to exercise supplemental jurisdiction over his remaining state-law claims.  *Id.*; *see Romero*, 552 F.3d at 1313, 1318.

**AFFIRMED.**