[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2010
JOHN LEY
CLERK

No. 09-16078
Non-Argument Calendar

_____

Agency No. A095-455-458

XIU YUN WANG,
a.k.a. Xiu Yun Huang,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 20, 2010)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Petitioner Xiu Yun Wang, a native and citizen of China,  petitions this court

to review the order of the Board of Immigration Appeals' ("BIA") denying her untimely motion to reopen her removal proceedings, 8 C.F.R. § 1003.2(a). Wang argues that (1) this court should look to the 1951 Geneva Refugee Convention ("Refugee Convention") and the 1967 Protocol Relating to the Status of Refugees ("1967 Protocol") when interpreting and applying the procedural limitations of the Immigration and Nationality Act of 1952 ("INA"); (2) the BIA erred in declining to exercise its discretion to *sua sponte* reopen her case; (3) several provisions of the INA violate the Due Process Clause, and its equal protection component, of the U.S. Constitution; and (4) the BIA abused its discretion in denying her motion to reopen based on China's changed country conditions. For the reasons set forth below, we deny the petition for review.

I.

Wang first cites to the non-refoulement[1] provision, 8 U.S.C.

---

[1] "Refoulement" is a French term for the expulsion or return of a refugee from one state to another. Black's Law Dictionary (8th ed. 2004). Relatedly, "nonrefoulement" is defined as a refugee's right not to be expelled from one state to another, especially to one where his or her life or liberty would be threatened. *Id.*

§ 1231(b)(3)(A),[2] and references, *inter alia*, the Refugee Convention,[3] Article 33

of the 1967 Protocol,[4] in support of her claim that courts must look to Article 33 of

the Refugee Convention when interpreting and applying § 1231(b)(3)(A).

In deciding whether to uphold the BIA's decision, we are limited to the

grounds on which the decision was relied. *See NLRB v. U.S. Postal Serv.*, 526

F.3d 729, 732 n.2 (11th Cir. 2008); *Kwon v. INS*, 646 F.2d 909, 916 (5th Cir. May

4, 1981) (*en banc*). We ordinarily will not reach a question that the BIA declined

to address. *See Gonzales v. Thomas*, 547 U.S. 183, 186-87, 126 S.Ct. 1613, 1615,

164 L.Ed.2d 358 (2006); *INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154

L.Ed.2d 272 (2002).

Because the BIA declined to address Wang's claim that the procedural

limitations and the general non-refoulement provision of the INA should be

interpreted in light of several treaty provisions, her claim on this point is not

---

[2] Section 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if [he] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

[3] United Nations Convention Relating to the Status of Refugees, July 28, 1951, 19 U.S.T. 6259, T.I.A.S. No. 6577.

[4] Article 33 of the 1967 Protocol provides that "No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion. United Nations Protocol Relating to the Status of Refugees, art. 33, Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267.

properly before us, and we do not reach it.

## II.

Wang argues that the BIA erred in declining to exercise its discretion to reopen her case *sua sponte*, pursuant to the general non-refoulement provision set forth in 8 U.S.C. § 1231(b)(3)(A). She also challenges the constitutionality of the provisions of the INA that prevent an alien subject to a final order of removal from reopening her case to pursue a withholding-of-removal claim based on changed circumstances other than those that arose in her country of nationality, but allow an alien with a final removal order, who returns to the United States after removal and seeks withholding of removal under the Convention Against Torture ("CAT") based on changed circumstances arising outside their country ("returnee aliens"), to apply for the same relief. She contends that the general non-refoulement provision, 8 U.S.C. § 1231(b)(3)(A),  protects her individual rights to another hearing prior to removal. She contrasts 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 1241.8, which apply to returnee aliens, with 8 C.F.R. § 1003.2, which applies to aliens with final removal orders who have not yet left the United States, and argues that the differential treatment accorded these two classes of aliens denies

due process and equal protection in violation of the Fifth Amendment.[5] According to Wang, the rights to withholding of removal and to be free from persecution are fundamental; thus, the differential treatment of returnee aliens, versus aliens subject to deportation who have not yet left, is subject to strict scrutiny.

First, to the extent that Wang argues that the BIA erred in refusing to *sua sponte* reopen her case, we lack jurisdiction to review its decision. *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293-94 (11th Cir. 2008) (holding that we lack jurisdiction to hear an appeal of the BIA's denial of a motion to reopen based on its *sua sponte* authority). However, we retain jurisdiction to consider constitutional claims and questions of law under the INA raised in a properly-filed petition for review. INA § 242(a)(2)(D); 8 U.S.C. § 1252(a)(2)(D); *Ferguson v. U.S. Att'y Gen.*, 563 F.3d 1254, 1259 (11th Cir. 2009).

Under the equal protection component of the Due Process Clause, the government must treat similarly situated persons in a similar fashion. *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305-06 (11th Cir. 2009). When a law classifies a person in such a way that the person is treated

---

[5] The basis for Wang's differential treatment claim is that a returnee alien is allowed to pursue a withholding of removal claim based on changed circumstances other than those that arose in their country of nationality, whereas aliens who have not yet left the United States are limited to claiming changed circumstances in their country of nationality in order to reopen their case.

differently, our level of scrutiny depends on the legislature's basis for that classification. *Id.* Because "Congress has plenary power to pass legislation concerning the admission and exclusion of aliens," federal classifications that distinguish among groups of aliens are subject only to the non-demanding rational basis review. *Resendiz-Alcatrez v. U.S. Att'y Gen.*, 383 F.3d 1262, 1271 (11th Cir. 2004) (citations omitted). A "legislative classification subject to rational basis review is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). This court's review of enactments subject to the rational basis standard must be "a paradigm of judicial restraint." *FCC v. Beach Commc'ns*, 508 U.S. 307, 314, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). If any reasonably conceivable set of facts can provide a rational basis for the challenged legislative classification, we are required to uphold such legislative classifications, and the challenging party bears the burden to demonstrate that no conceivable basis exists to support the classification. *Resendiz-Alcatrez*, 383 F.3d at 1271 (quotation and citation omitted).

The non-refoulement provision, § 1231(b)(3)(A), provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social

6

group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Pursuant to 8 C.F.R. § 1003.2(c)(2), an alien subject to deportation must file her motion to reopen within 90 days of the final removal order. 8 C.F.R. § 1003.2(c)(2); 8 U.S.C. § 1229a(c)(7)(A), (C)(i). However, there is no time limit on the filing of a motion to reopen if it is based on changed country conditions arising in the country to which removal has been ordered, and if the evidence in support of that motion is material, and was not available or discoverable at the prior proceeding. 8 C.F.R. § 1003.2(c)(3)(ii); 8 U.S.C. § 1229a(c)(7)(C)(ii).

Pursuant to 8 C.F.R. § 1241.8(a), an alien who illegally reenters the U.S. after having been removed, or having departed voluntarily, while under a removal order, shall be removed through reinstatement of the prior order. 8 C.F.R. § 1241.8(a). However, if such an alien expresses a fear of returning to the country of removal, the regulations provide that she "shall be immediately referred to an asylum officer for an interview to determine whether [she] has a reasonable fear of persecution or torture." *Id.* at § 1241.8(e). Thus, the returnee alien need not show changed country conditions in order to bring another claim of a reasonable fear of persecution or torture. *See id.*

The Supreme Court has held that motions to reopen are disfavored in removal proceedings because "[t]here is a strong public interest in bringing

7

litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *I.N.S. v. Abudu*, 485 U.S. 94, 107, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988).

Because Wang has failed to negate "every conceivable basis which might support" (1) allowing a returnee alien who expresses fear of returning to her home country to have an interview with an asylum officer, and (2) barring an alien, who is subject to a removal order and has not yet left the United States, from filing an untimely motion to reopen, except upon a showing of changed country conditions, we conclude that Wang's constitutional challenges are without merit.

### III.

Wang next argues that her application for withholding of removal and supporting documentation provided in her motion to reopen established a *prima facie* case for asylum, withholding of removal, and CAT relief, because (1) she submitted a copy of 1996 family planning regulations from Liang Jiang County in the Fujian Province that require, *inter alia*, sterilization of a husband or wife within 40 days of the birth of their second child; (2) China's family planning policies are being enforced against Chinese nationals with children born in China and those with children born abroad; and (3) she had submitted certificates of sterilization of two of her friends who live in Changle City. Wang contends that

8

to verify these supporting documents would require the assistance of Chinese government officials, and to request such assistance would be an undue burden. Wang also argues that the BIA erred in concluding that she had not shown that she would be subjected to economic harm amounting to persecution. She next contends that the State Department's 2008 Country Report on China ("Country Report") shows that coercive pregnancy termination practices are used by the Chinese government. Therefore, her fear is objectively reasonable that she, more likely than not, would be sterilized upon being returned to China, and her motion to reopen should have been granted because she made a prima facie showing for withholding of removal. Wang also contends that the evidence presented regarding China's stricter enforcement of population planning rules established a change in China's country conditions, and thus, she argues, she is thereby exempt from the 90-day filing deadline.

We lack jurisdiction to review claims that the petitioner failed to raise before the BIA, regardless of whether the BIA chose to *sua sponte* address them. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250-51 (11th Cir. 2006). We review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). "Our review is limited to determining whether the BIA exercised its discretion in an

arbitrary or capricious manner." *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256

(11th Cir. 2009).

An alien may file one motion to reopen removal proceedings, and such

motion generally must be filed within 90 days of the date of the BIA's final order.

INA § 240(c)(7)(A), (C)(i), 8 U.S.C. § 1229a(c)(7)(A), (C)(i).  However, the 90-

day time limit does not apply if the motion to reopen is filed on the basis of

changed circumstances in the country of the movant's nationality.  8 U.S.C.

§ 1229a(c)(7)(C)(ii); 8 C.F.R. §§ 1003.2(c)(3)(ii).  To meet this exception, a

movant must show material evidence that was not available and could not have

been discovered or presented at the prior hearing.  8 U.S.C. § 1229a(c)(7)(C)(ii); 8

C.F.R. § 1003.2(c)(3)(ii).  Under 8 C.F.R. § 1287.6, an "official document," such

as a certificate of sterilization surgery or abortion, is required to "be evidenced by

an official publication thereof, or by a copy attested by an officer so authorized,"

but unofficial documents, such as letters from family members or neighbors need

not be so evidenced.  8 C.F.R. § 1287.6.  "An alien who attempts to show that the

evidence is material bears a heavy burden and must present evidence that

demonstrates that, if the proceedings were opened, the new evidence would likely

change the result in the case." *Jiang*, 568 F.3d 1252, 1256-57.

In *Li*, we held that an alien's extensive, "undisputed evidence of a recent

campaign in her home village in China of forced sterilization warranted reopening based on changed country conditions." *Li*, 488 F.3d at 1375. We noted that the BIA in Li's case did not find either Li's supporting affidavit nor her mother's affidavit incredible, and that the background materials submitted supported Li's fear that Fujian Province officials had "incentives and discretion" to sterilize women with more than one child. *Id.* We determined that "Li's evidence of a recent campaign of forced sterilization in her home village, evidence consistent with the conclusion of recent government reports, clearly satisfied the criteria for a motion to reopen her removal proceedings." *Id.*

In *Jiang*, we addressed the BIA's denial of Jiang's motion to reopen based on changed country conditions in China, filed after she had two children in the United States, and in which she claimed that she feared persecution if returned to China because her violation of China's one-child policy would lead her to be forcibly sterilized. *Jiang*, 568 F.3d at 1254. We noted that the case was "startlingly like the case of *Li*" with regard to the evidential foundation presented in each case. *Id.* at 1257-58.

Jiang argued that "recent increased enforcement of the one-child policy in the Fujian Province, and more particularly, in her hometown, reasonably led her to fear that she too would face persecution in the form of forced sterilization if she

were removed to China." *Id.* at 1258. We held that:

> [t]he BIA's decision again overlooked, or, inexplicably discounted, not only the two affidavits Jiang provided in support of her petition, detailing forced sterilizations in Jiang's own hometown—neither of which the BIA or IJ found incredible—but also the 2004 and 2005 Country Reports, which unambiguously corroborated incidents of coerced sterilization, and explicitly recognized that the Fujian Province is known for using 'unspecified remedial measures' to deal with those in violation of family planning polices.

*Id.* Accordingly, we held, "Jiang's evidence established a *prima facie* case for asylum and withholding of removal, especially in light of *Li*," and directed the BIA to reopen proceedings to consider the merits of her claims for asylum and withholding of removal. *Id.*

Because Wang's evidence failed to establish changed conditions with respect to China's enforcement of its one-child policy, we conclude that the BIA correctly denied Wang's motion to reopen.

PETITION DENIED.